OLIVIA G. BATES, Respondent, *v.* LOUISE FAUL VIROLET and Others, Appellants, Impleaded with LEONIE OLIVIA KAYSER and Others, Respondents.

*Deed — rule that an estate granted cannot be diminished by the habendum clause — it must yield to the intent — admissions not binding on infants — legitimation of an infant in a foreign country — its right to inherit land.*

The rule that whenever there is a grant contained in the premises of a deed, operative by its terms between all the parties to the deed, the estate granted in the premises is not to be diminished by the habendum clause, must yield in any particular case to the manifest intent of the grantor, if it is plain that such intent makes this rule inapplicable.

In the premises of a tripartite deed the party of the first part granted unto the party of the second part and to her heirs and assigns forever a certain parcel of land which the habendum clause stated she was "To have and to hold * * * unto the said party of the second part, to her own proper use, benefit and behoof, for the residue and remainder of her natural life, and from and after the decease of the said party of the second part hereto unto the said party of the third part, his heirs and assigns, to his and their own proper use and benefit and behoof forever."

In the body of the deed the words "and third" were interlined in various places after the word "second," wherever the parties were referred to, except in the single instance of the granting words, and such interlineations were stated over the signature of the subscribing witness to have been made before the execution of the deed, and the several covenants of seizin, quiet enjoyment, further assurance and warranty ran to the parties both of the second and of the third parts.

*Held,* that the intent to convey an estate to the party of the third part was clearly made to appear in the deed, which must be construed in accordance with such intent.

A judgment affecting the rights of infants should not be based upon admissions as to the existence of crucial facts and of the law of a foreign country relating thereto.

The legitimation of an infant under the laws of a foreign country, where the marriage took place and the parents were domiciled, is effective in the determination of the right of such infant to inherit property in the State of New York as an heir at law of its father.

APPEAL by the defendants, Louise Faul Virolet and others, from an interlocutory judgment of the Supreme Court in favor of the plaintiff and certain of the defendants, entered in the office of the clerk of the county of New York on the 28th day of February, 1898, upon the report of a referee.

*Alexander & Green,* for the appellants.

*Charles H. Griffin,* for the respondents Kayser and Bertrand.

PATTERSON, J. :

This action was brought for a partition of certain real estate situate in the city of New York. By the interlocutory judgment, from which this appeal is taken, it was determined that the plaintiff is seized of an undivided one-half, and that the defendants Julie O. Bertrand and Leonie O. Kayser are each seized of an undivided one-fourth of the premises in question. The suit was originally brought by Olivia Hoyt, who alleged in her complaint that she owned one-half of the premises ; that Olivia G. Bates owned the other half ; that the defendants Kayser and Bertrand and the three defendants Virolet " pretend or claim to have some interest in the premises," the nature of which interest was unknown to the plaintiff. The real situation of the present plaintiff's claim of title does not appear in the pleadings, but it is shown in the proofs. Pending suit, and apparently before answer, Mrs. Bates conveyed her one-half interest mentioned in the complaint to the defendants Leonie O. Kayser and Julie C. Bertrand, and they conveyed to Mrs. Hoyt an undivided one-half interest in the premises. Also pending suit, Mrs. Hoyt, the original plaintiff, conveyed to Mrs. Bates all her right, title and interest in the whole premises, thus divesting herself of any claim to the property. Mrs. Hoyt died, and by order of the court Mrs. Bates was substituted as plaintiff, and her claim is now principally based on the assumed ownership of that half of the premises which in the complaint it is alleged belonged to Mrs. Hoyt when the action was brought. As no change has been made in the pleadings, so far as the record discloses, the case has been tried without either a complaint or answer setting up the title of Mrs. Bates to the one-half interest retained or claimed by Mrs. Hoyt when she instituted the suit, but all parties have proceeded to trial on the assumption that Mrs. Bates' rights, if any she has, under the deed from Mrs. Hoyt, include those asserted by Mrs. Hoyt in the complaint. Mrs. Bates was an original defendant, but did not answer. The defendants Kayser and Bertrand, in their joint answer, among other things, seem to admit that Mrs. Hoyt had an interest in the premises, but they deny that Mrs. Bates, as a defendant, was the

owner of one undivided half part of the premises, and they then proceed to set up that the defendant Louise Virolet was married to one Jean B. Virolet in February, 1880, and that the defendant Leon Virolet, the son of Louise and Jean B. Virolet, was born in September, 1877, prior to the marriage of his parents, and was, therefore, born out of wedlock and illegitimate, and not one of the legal heirs of the said Jean B. Virolet. Their answer further sets up a conveyance to them by Mrs. Bates of the one-half interest which, in the complaint, it is alleged belonged to Mrs. Bates. The answer of the defendants Kayser and Bertrand then proceeds to set up the defense (which does not require further consideration) of the Statute of Limitations as against any claim of the defendants Virolet, and prays for a judgment of partition and disposition of the premises according to the respective rights of the parties, or, if such cannot be made, for a sale of the premises and a disposition of the proceeds among the parties according to such respective rights. The answer of the defendant Louise Virolet sets up that her husband, Jean B. Virolet, by a former marriage, was a son-in-law of Olivia Hoyt; that the premises involved in this action and described in the complaint were conveyed by one Robert H. Pearson, of San Francisco, California, by deed, a copy of which is annexed to the complaint. She then denies that Mrs. Hoyt was seized of an estate in fee simple at the time this suit was brought, or at any other time. She alleges that under and by virtue of the deed referred to, Mrs. Hoyt became and was entitled to an estate in the premises for her own life, and that Jean B. Virolet took a remainder in fee under such deed; that Jean B. Virolet died in France, intestate, leaving him surviving his wife, said defendant Louise Virolet, and also the defendants Mrs. Kayser and Mrs. Bertrand (children by his former marriage with Mrs. Hoyt's daughter), and the infant defendants Leon Virolet and Jean Virolet, his only heirs at law; and that thereby by descent the defendants Mrs. Kayser, Mrs. Bertrand and the two infant defendants became seized in fee as tenants in common of the premises, subject to her, Louise Virolet's, right of dower therein. The rights of the parties, therefore, as claimed by this answer, at the time it was interposed, were, that the plaintiff, Mrs. Hoyt, was entitled to a life estate; that she, the defendant Louise Virolet, was entitled to dower in the premises, to begin in posses-

sion upon the death of Mrs. Hoyt, and that the four children of John B. Virolet were seized of a remainder as tenants in common, the husbands of the defendants Mrs. Kayser and Mrs. Bertrand each having an estate by the curtesy initiate in the undivided share of his wife, and that none of the other parties had any interest in the premises. Facts are then set up in this answer which would constitute a cause of action to reform the Pearson deed, but it is unnecessary to consider them. The prayer for relief contained in the answer is (other than that relating to the reformation of the deed) for a partition of the land between the parties according to their several rights; or, if partition cannot be made, that the right, title and interest of all parties to the action be sold and the proceeds be divided among them according to their respective rights.

Leon Alfred Virolet and Jean Robert Virolet are infants, and an answer was interposed in their behalf by their guardian *ad litem*, which sets forth their interests substantially in the same way as they are stated in the answer of their mother, and they ask for the same relief respecting a partition and sale of the premises. The proofs taken by the referee relate to all the matters set up in these answers, and the rights of the respective parties have been determined upon all such proofs.

The finding of the referee that Mrs. Bates, the present plaintiff and Mrs. Kayser and Mrs. Bertrand, were the owners as tenants in common of the whole estate passing by the Pearson deed, was based upon a construction of that deed which made it operative as a conveyance only between Pearson, the grantor, and Mrs. Olivia Hoyt, one of the parties to the conveyance. By the terms of that deed there were three parties to it, namely, Pearson, the grantor; Mrs. Hoyt, party of the second part, and Jean B. Virolet, party of the third part. In the premises of that deed it is stated that the party of the first part hath granted, etc., and by these presents doth grant, etc., unto the said party of the second part, and to her heirs and assigns forever, all that certain piece or parcel of land, etc., describing the premises in question. The habendum clause is as follows : " To have and to hold the above-granted, bargained and described premises, with the appurtenances, unto the said party of the second part, to her own proper use, benefit and behoof, for the residue and remainder of her natural life, and from and after the decease of the

said party of the second part hereto unto the said party of the third part, his heirs and assigns, to his and their own proper use and benefit and behoof forever." Upon these two provisions of the deed the learned referee held that the whole estate passed to Mrs. Hoyt by the granting clause or the premises of the deed, and that the terms of the habendum clause being repugnant to the terms of the grant the premises must prevail, and that the estate thereby granted cannot be diminished nor cut down nor varied by anything contained in the habendum.

It is a rule of construction applicable to the interpretation of deeds that whenever there is a grant contained in the premises of a deed, operative by its terms *between all the parties to the deed*, that the estate granted in the premises is not to be diminished by the habendum, and in disposing of this case the learned referee has applied that rule which was enforced in *Mott* v. *Richtmyer* (57 N. Y. 49). That case was considered by the referee as controlling here. There can be no doubt of the existence of the rule of construction, but it is only *a rule of construction* and must yield to the manifest intent of a grantor if it is made plain that such intent makes that rule inapplicable. In the State of New York rules of construction are not arbitrarily applied even as to deeds. It is provided by statute (1 R. S. 748, § 2) that "in the construction of every instrument creating or conveying, or authorizing the creation or conveyance, of any estate or interest in lands, it shall be the duty of courts of justice to carry into effect the intent of the parties so far as such intent can be collected from the whole instrument and is consistent with the rules of law." This provision of the statute makes it the imperative duty of the courts to ascertain the intention of the parties from all the provisions of the instrument. If there is nothing more in the deed than a grant of the whole estate subsequently limited by the habendum clause, then the rule of construction laid down in *Mott* v. *Richtmyer* must necessarily prevail; that is to say, where there is nothing more than the premises and the habendum to be considered the settled rule of construction will apply. The purpose and intent of the section of the statute is declared by the revisers to be, in substance, the application to conveyances of land of the principle of interpretation which universally applies to the construction of personal contracts and of wills, and Judge DUER, one

of the revisers, in *Langdon* v. *Astor's Executors* (3 Duer, 555), states that the statute makes it "the duty of judges in all courts and in all cases to carry that intention, when ascertained and consistent with the rules of law, into full effect *without regard to the technical force or technical defects of the phraseology in which it was conveyed.* Rules of construction may still with great propriety be invoked to aid in the discovery of a doubtful intention, but the declared will of the Legislature will be set aside and nullified if they shall be permitted to defeat that which the court, judging from the whole instrument, is satisfied corresponds with the minds of the parties. The section was adopted by the Legislature in the very words in which it was submitted by the revisers. The reasons for its adoption accompanied its submission, and it is a reasonable and just presumption that it was enacted in the sense in which it was proposed."

In determining the rights of the parties to this action, under the Pearson deed, which is the source of title of all who are interested in the premises, we are not limited "to the technical force or technical defects of the phraseology," in which the interests were conveyed. We are to ascertain the intent from the whole instrument, and it may be assumed that we are not at liberty to go outside of the terms of the instrument itself to ascertain that intent. We have, therefore, given no regard whatever to declarations or statements of Mrs. Hoyt concerning her understanding of the quantity of interest derived by her through the Pearson deed, but within the four corners of that deed there is the most convincing evidence of an intent to limit the interest granted in the premises to Mrs. Hoyt to an estate for life and to give the absolute fee in the remainder to Jean B. Virolet and his heirs. In the first place, if it were intended that Virolet should have no relation to the conveyance, why should he be made a party to the instrument? The circumstance of making a person a party to a deed indicates some intent that he shall in some way be affected by the conveyance; but that is a consideration not entitled to much weight standing alone. The deed (or a *fac simile* of it) from Pearson has been submitted to us. It is the ordinary stationer's blank of a long-spaced, full-covenant warranty deed, such as was in ordinary use by conveyancers in the year 1865. The conveyance is partly in print and partly in writ-

ing. It was in blank form a deed between a party of the first part and a party of the second part. As filled up and executed, it is a deed between a party of the first part and a party of the second part and a party of the third part, and Jean B. Virolet is specifically described in the deed as the party of the third part. In that deed, as it was executed, in various places the words "and third" are interlined after the word "second" wherever the parties are referred to, except in the single instance of the granting words in the premises. And in addition to the interlineation of the words "and third" above referred to, it is stated over the signature of the subscribing witness to the deed that the words "and third" were interlined before the execution wherever they occurred in the deed, thus showing the most deliberate and careful introduction into the deed of the third party for the purposes of the conveyance. Taking those circumstances into consideration with the terms of what is called the habendum clause, it is perfectly apparent that it was not the intention of the testator to grant the whole estate to the party of the second part in fee simple absolute, but that the terms of the grant were to be found as well in the habendum clause as in any other part of the deed. Looking at the *fac simile* before us, it appears that in the so-called habendum clause there was a clear intent to fix the quantity of the estate to be taken by the grantees of the deed. As that clause was printed, it read as follows: "To have and to hold the above-granted, bargained and described premises with the appurtenances unto the said party of the second part     heirs and assigns, to     their own proper use, benefit and behoof forever." As executed, the words are: "To have and to hold the above-granted, bargained and described premises with the appurtenances unto the said party of the second part to her own proper use, benefit and behoof for the residue and remainder of her natural life, and from and after the decease of the said party of the second part *unto* the said party of the third part," etc. Here is disclosed a manifest intent (taken in connection with the other alterations from the printed form of the deed to which reference has been made) to have the estate *pass by the words of the habendum,* so far as the quantity of estate to be taken by each of the parties of the second and third parts is concerned. That view is emphasized and enforced by the covenants of the deed. There is a

covenant of seizin made by Pearson, the grantor. It does not run to the party of the second part alone, but to the parties of the second and third parts. There is a covenant of quiet enjoyment which runs to the party of the second part and to the party of the third part. There is a covenant of further assurance which runs to the party of the second part *and* the party of the third part. And further than that, there is a personal covenant of warranty which runs to the party of the third part as well as to the party of the second part. Now, can it be reasonably claimed that these covenants would be made directly to and with Jean B. Virolet as party of the third part and to be enforcible by him, unless it were intended that he should take an estate in the land by virtue of the deed ? The learned referee assumed that whatever may have been the intention of the grantor, there are not sufficient words in the deed to effectuate that intention by an operative grant. But, as said before, the intention is to be determined without regard to technical force or technical defects of phraseology ; and an intent to convey an estate to John B. Virolet is most clearly and unmistakably made to appear in this deed. The referee was, therefore, in error in applying the rule of construction which he followed in deciding this case.

The proper interpretation of the deed is, that Mrs. Olivia Hoyt took only a life estate. At the time this cause was decided she was dead, and Mrs. Bates, the substituted plaintiff, took nothing except the Kayser and Bertrand interest by conveyance from Mrs. Hoyt, which would survive the latter. The referee's conclusion, therefore, with respect to Mrs. Bates being entitled to the undivided half under the grant from Pearson to Mrs. Hoyt was erroneous. At the time of the entry of this judgment she had no interest in the premises except that derived through the deed of Mrs. Kayser and Mrs. Bertrand, but these premises belonged to her and the children of Jean B. Virolet, subject to the right of dower of the defendant Louise Virolet.

A question has arisen as to the rights of the children of Jean B. Virolet ; and inasmuch as those children have asked for a partition and sale of the premises and that their rights in the property be settled by decree, they are entitled to have such rights adjudged in this action. (Code Civ. Proc. § 1543 ; *Hagerty* v. *Andrews*, 94

N. Y. 195.) The precise question arising on this branch of the case is as to the right of the child of Jean B. Virolet born in September, 1877. Is that child entitled to a share? He was born before the marriage of his parents, and if that fact alone appeared upon the record it might be necessary to exclude him as an heir at law of Jean B. Virolet; but it is made to appear by stipulation in the case that Jean B. Virolet was a citizen of the Republic of France, and was there duly married in accordance with French law to Louise Hortense Faul on the 24th of February, 1880, and it is also stipulated that all of the defendants, other than the defendant Bates, are, and at all times have been, residents and citizens of and domiciled in the Republic of France, except that at some time prior to the month of February, 1880, Jean B. Virolet and Louise H. Virolet were residents of New York city. It was also stipulated that certain documents appearing in the case, being Acts of Marriage of the Prefecture of the Department of the Seine, extracts from the Registry of Births in the Department of the Seine in France, are competent evidence of he facts contained in such documents, and all the parties consented to the introduction of the documents in evidence upon the trial of the action. By these documents it is made to appear that on the 8th day of September, 1877, the infant defendant Leon Alfred Virolet was born in Paris; "father not named;" mother Louise Hortense Faul, and the following is written in the margin of that instrument: "By formal statement received in this mayor's office May eighth, one thousand eight hundred and seventy-eight, Louise Hortense Faul has acknowledged to be the mother of the child registered here, No. 1217. By their certificate of their marriage performed in this Mayor's office on this twenty-fourth day of February, one thousand eight hundred and eighty, Jean Baptiste Antoine Virolet and Louise Hortense Faul have recognized and legitimized the child here registered No. 1217." There is another instrument emanating from the Prefecture of the Department of the Seine which is a certificate of marriage between Jean Baptiste Antoine Virolet and Louise Hortense Faul, and in that certificate of marriage is the following: "And immediately after the said spouses declared that they recognized and legitimized a child of the male sex, born on September seventh, one thousand eight hundred and seventy-seven, in Paris, * * * under the name of Leon Alfred, as a son of the wife

above named." These instruments bear upon their face evidence of certain legal formalities, looking to the legitimation of the child Leon Alfred. There is evidence in the record to show that the formalities thus complied with were sufficient to give to Leon Alfred the status of a legitimate child in France, with the same effect as if he had been born in wedlock. It is shown in evidence that by section 331 of the French Civil Code, it is provided as follows: "Children born out of wedlock * * * can be legitimated by the subsequent marriage of their father and mother when the latter have lawfully acknowledged them before marriage, or when they acknowledge them in the certificate of celebration." The instruments to which reference has been made contained an acknowledgment in the registry at the time of the marriage of the parentage of the child Leon Alfred, and (by admissions only) it is established that under the law of France that child was made legitimate. This conclusion is necessarily based upon the admissions of fact and of law as contained in the record. But a judgment affecting the rights of infants should not be based upon admissions as to the existence of crucial facts and of the law of a foreign country relating thereto. In the case at bar, it is true that the conclusion at which we have arrived is founded upon such admissions; but a new trial being ordered, the error into which the counsel have fallen in respect to the efficacy of such admission can be repaired by the introduction of competent legal evidence.

It remains to be considered what would be the effect of the legitimation of Leon Alfred upon his right to inherit property in the State of New York as an heir at law of his father. That question has been settled by what was decided in *Miller* v. *Miller* (91 N. Y. 315), in which case it was held, upon a full consideration of the authorities bearing upon the subject, that, "when an illegitimate child has, by the subsequent marriage of his parents, become legitimate by virtue of the laws of the State or country where such marriage took place and the parents were domiciled, it is thereafter legitimate everywhere, and entitled to all the rights flowing from that status, *including the right to inherit.*" The subject is so fully considered in the case cited that it is unnecessary to pursue it farther.

The rights of the parties, as the case is now made, appear to be the following: Mrs. Bates, or Mrs. Bertrand and Mrs. Kayser, are

entitled to interests in one-half. We cannot determine the specific shares of those parties, because the deed from Mrs. Kayser and Mrs. Bertrand, conveying interests to Mrs. Bates, is not before us. Only a general reference to its having been read in evidence is contained in the record. The infant children of Jean B. Virolet have each a one-fourth interest, subject to proper proof on a new trial as to Leon Alfred. All interests are subject to the dower of the defendant Louise Hortense Virolet.

The foregoing considerations lead to a reversal of the interlocutory judgment.

Judgment reversed and new trial ordered, with costs to abide the event.

VAN BRUNT, P. J., RUMSEY and INGRAHAM, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.

NOTE.— On a motion for reargument it was suggested that Jean B. Virolet died before Mrs. Hoyt, the life tenant, and that hence his widow was not entitled to dower. There being a misunderstanding as to the date of the death of Mr. Virolet the court declared that the question of dower should remain open to be determined upon the proof as it might be made on a new trial.