Nathah R. Sobel, S.
This proceeding raises the issue of the right of illegitimate children who have suffered “ pecuniary-injuries ” to share in the distribution of damages recovered in an action for the wrongful death of their putative father.
Two issues are discussed;
I. The rights of such illegitimates under the Equal Protection Clauses of the Federal and State Constitutions (U. S. Const., 14th Amdt.; N. Y. Const., art. I, § 11).
II. The recognition required to be given by the courts of this State to legitimation statutes of other States, in this instance, Puerto Rico.
The parties have agreed to submit the legal questions before offering proof of paternity. Some other factors need to be mentioned. The issue of the rights of these illegitimate children is ñrst raised after a compromise had already been reached and approved in an action brought by the administrator. The damages were sought on behalf of the dependent parents as sole distributees of the deceased. The children seek only to *757 share in the statutory distribution although they were not “ persons for whose benefit the action is brought” (EPTL 5-4.3). It should be observed also that under the pertinent statute (EPTL 4-1.1) the children would take all to the exclusion of the parents, although the latter did establish pecuniary injury while the former might not have been able to do so. These problems and the issue of paternity will be reserved for later determination. Only the legal questions are discussed.
THE NEW YORK STATUTES.
EPTL 5-4.4 provides that damages in an action for wrongful death “ are exclusively for the benefit of the decedent’s distributees and, when collected, shall be distributed to the persons entitled thereto under 4-1.1 ” in proportion to the pecuniary injuries suffered by them.
EPTL 4-1.1 governs the descent and distribution of property of a decedent in intestacy.
The wrongful death statute’s incorporation by reference of the distribution statute is “ short-cut ” legislation. The former did not always include all distributees as beneficiaries of a wrongful death action. Like such statutes in many States it at one time limited damages to closest of kin. The point is that the Legislature may in its absolute discretion designate one class of beneficiaries to inherit and another class to receive the damages for wrongful death. That it elected to make each the same has no significance.
When, however, one statute incorporates by reference the provisions of another, it usually incorporates by operation of law amendments to the latter and often as well decisions of courts affecting the latter. In the instant situation, as the classes of distributees entitled to inherit in intestacy are broadened or narrowed, so are those entitled to damages in wrongful death action; and, to state the issues specifically, as illegitimates are permitted by statute or decision to inherit, these become automatically entitled to distribution of the proceeds of wrongful death actions.
As do other States, New York has two kinds of legitimation statutes. One kind legitimates a child born illegitimate. The other kind, by broadening the class of legitimates, in effect makes a child born illegitimate, legitimate from birth mmc pro Umc.
EPTL 4-1.2 is a legitimation statute. It specifies the circumstances under which a child born illegitimate may be a “ distributee ” (EPTL 1-2.5) entitled to inherit in intestacy and therefore by operation of law to be the beneficiary of a wrongful *758 death action. That statute provides that an illegitimate child is the legitimate child of his mother entitled to inherit from her and she from him and, in consequence, each may share as beneficiary for the wrongful death of the other. But under the same statute an illegitimate child may neither inherit from his father nor the father from him unless 1 ‘ a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child.” Thus, only if such an order of filiation is duly made may the illegitimate child share in the recovery for the wrongful death of his father.
Some things, pertinent to the later discussion of the legal problems, should be noted about this filiation statute.
First, neither formal acknowledgment outside of court nor informal acknowledgment, such as residing in the same household or furnishing support, suffices to give the illegitimate status (Matter of Consolazio, 54 Misc 2d 398). Status, if it is to be recognized, must be effected through a proceeding in the Family Court (Family Ct. Act, §§ 511-518). Many States recognize less formal procedures and because of this conflict of law problems are created for our courts when the illegitimate is born in one of such jurisdictions.
Second, because of the short limitation of time within which to commence a filiation proceeding, no initiative of the child — since he cannot act for himself — can achieve for him legitimate status. Such a provision creates constitutional questions.
Former sections 24 and 145 of the Domestic Relations Law represent the second kind of statute, those that legitimate for all purposes an illegitimate nunc pro tunc from birth. Both sections speak in terms of a marriage of the parents. In the instant case there is no claim that the parents married" Common law or otherwise. The statutes are briefly discussed because “ marriages ” in other jurisdictions have caused conflict of law problems for our courts.
Former sections 24 and 145 have been repealed, effective April 30, 1969. In their place a new section 24 of the Domestic Relations Law has been enacted (L. 1969, ch. 325). The new section is as comprehensive a “ marriage” provision as any in the Nation. It does away with all former distinctions for the purposes of Iegitimacy_ between void and voidable marriages and between marriages taking place within or without the State. Its pertinent provisions areA child heretofore or hereafter born of parents who prior or subsequent to the birth of such child shall have entered into a civil or religious marriage, or *759 shall have consummated a common law marriage where such marriage is recognized as valid, in the manner authorized by the law of the place where such marriage takes place, is the legitimate child of both natural parents notwithstanding that such marriage is void or voidable or has been or shall hereafter be annulled or judicially declared void.”
In consequence of this new statute New York will recognize bigamous, incestuous or other void marriages no matter where performed as legitimating from birth an illegitimate child of the parties to such a marriage. Contrary decisions are no longer law (cf. Olmsted v. Olmsted, 190 N. Y. 458, affd. 216 U. S. 386).
With these statutes in mind, we discuss the two issues of law raised in this proceeding.
I
“ No State shall * * * deny to any person within its jurisdiction the equal protection of the laws ” (U. S. Const., 14th Amdt.). “No person shall be denied the equal protection of the laws of this State ” (N. Y. Const., Art. I, § 11).
These provisions do not forbid unequal laws and do not require every law to be equally applicable to all persons (Barbier v. Connolly, 113 U. S. 27). Equal protection only requires that a statute operate equally upon all members of the group provided the group is defined reasonably — reasonably being measured in terms of a proper legislative purpose.
The inquiry in this case is whether the line drawn between legitimates as a group and illegitimates as a group by our wrongful death statute (EPTL 5-4.4) has a rational purpose in terms of the purpose of that statute to permit recovery for pecuniary loss for causing death of a parent. May the criterion of illegitimacy be used as a basis for legislative classification in that statute 1 Denying to illegitimates damages recoverable by legitimates is acceptable only if related to a proper public concern in which illegitimates and legitimates are not situated similarly. The inquiry is whether such statutory differentiation rests on grounds wholly or substantially irrelevant to achievement of the statutory objectives.
That inquiry has recently been answered with respect to the right of an illegitimate child to recover for the death of his mother (Levy v. Louisiana, 391 U. S. 68) and the mother to recover for the death of her illegitimate child (Glona v. American Guar. Co., 391 U. S. 73). The Supreme Court held that Louisiana’s wrongful death statute, which unlike our own does not permit an illegitimate child to recover for the wrongful death of his mother and vice versa, violates the Equal Protec *760 tion Clause of the Fourteenth Amendment. The court held that ‘1 Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother. We conclude that it is invidious to discriminate against them when no action, conduct or demeanor of theirs is possibly relevant to the harm that was done the mother.” (p. 72).
This was the conclusion reached despite Louisiana’s assertion of several rational purposes for her wrongful death statute:
“ Louisiana’s purposes in granting greater rights to legitimates than to illegitimates are not the punishment of illegitimates and not even discrimination against immorality in sexual behavior. Louisiana’s purposes in this area are positive ones: the encouragement of marriage as one of the most important institutions known to law, the preservation of the legitimate family as the preferred environment for socializing the child, and the preservation of security and certainty of property rights linked with family status. * * *
‘ ‘ Since marriage as an institution is fundamental to our existence as a free nation, it is the duty of the State of Louisiana to encourage it.
“ One method of encouraging marriage is granting a greater right to legitimate offspring than those born of extra-marital unions. Superior rights of legitimate offspring are inducements or incentives to parties to contract marriage, which is preferred in Louisiana as the setting for producing offspring ” (Brief of Attorney General of Louisiana). None of these purposes, the court held, were rationally related to grouping only legitimate children in the class permitted to recover damages for wrongful death.
As noted heretofore, New York’s statute does permit recovery by an illegitimate child for his mother’s tortious death but not for his father’s. The latter is at issue in this case.
By virtue, however, of the decisions of the Supreme Court the only question open to this court is whether there are other legislative purposes present in the father-child relationship which are not present in the mother-child relationship and, if present, whether these purposes pass the test of the Fourteenth Amendment’s Equal Protection Clause.
That question too has been answered very recently by the New Jersey Supreme Court in respect of a wrongful death statute substantially similar to our own — i.e., permitting illegitimates to recover for wrongful death of their mother but not their putative fatfler (Schmoll v. Creecy, 54 N. J. 154; 254 A. 2d 525). That court held that it is invidious and a denial of equal protection to provide a remedy to the legitimate child for the wrongful death of *761 his father and to deny such remedy to the illegitimate child (citing Hebert v. Petroleum Pipe Inspectors, 396 F. 2d 237; Armijo v. Wesselius, 73 Wn. 2d 716).
This court agrees with the New Jersey Supreme Court that no rational legislative purpose justifies discrimination in the wrongful death statutes in either the child-mother or the child-father relationship.
However, the New Jersey court reached its decision solely on the basis of its construction of the Supreme Court’s decision in Levy. It concluded that Levy found invidious discrimination in excluding illegitimates from recovering in either parent relationship. (Indeed, the Supreme Court of Louisiana, on remand [253 La. 73] regarded Levy as applicable to both parent relationships.) Having so concluded, the New Jersey Supreme Court found it unnecessary to explore whether any legislative purpose is present in the child-father relationship which is not present in the child-mother relationship.
But some difference does exist in such relationships at least with respect to the greater difficulty in ascertaining paternity. The putative father often goes his way unconscious of the birth of a child. Even if conscious, he is very often totally unconcerned because of the absence of any ties to the mother. Indeed the mother may not know who is responsible for her pregnancy. To the mother however, the birth of the child is a recorded or registered event usually taking place in the presence of others. In most cases the child remains with the mother and for a time is necessarily reared by her. That the child is the child of a particular woman is rarely difficult to prove. Proof of paternity on the other hand as experience has shown is a much more difficult problem.
Does the difficulty in ascertaining parentage in respect of the putative father present stronger affirmative justification for a rationally purposed legislative classification?
It is not difficult to perceive a rational purpose in excluding illegitimates in a statute governing intestate inheritance from the father. In such a statute the illegitimates ’ rights often come into direct conflict with those of a spouse and legitimate children. Recognition of the illegitimate automatically diminishes the share of such other next of kin. It has been suggested that a “ bar ’’ statute — i.e., one barring an illegitimate from inheriting unless during the lifetime of the putative father the illegitimate on his own initiative establishes paternity — would meet the test of rationality (see Krause, “ Equal Protection for the Illegitimate ”, 65 Mich. L. Rev. 477 [1967]; Krause, “ Equal *762 Protection and Paternity ”, 36 Univ. of Chicago L. Rev. 338 [1969]).
But we are not concerned here with inheritance statutes but rather with wrongful death statutes. In the latter, the establishment of status does not automatically or otherwise diminish the share of a spouse or legitimate children. The damages recoverable are measured, at least in legal theory, by the pecuniary injuries suffered by all statutory distributees individually.
Since allowing recovery to illegitimates does not impair the recovery of legitimates, the court in Levy (supra), asks the questions: “ When the child’s claim for loss of his mother is in issue, why, in terms of ‘ equal protection,’ should the tortfeasors go free merely because the child is illegitimate? * * * Legitimacy or illegitimacy of birth has no relation to the wrong allegedly inflicted on the mother by appellees.”
It is therefore concluded that EPTL 5-4.4 denies equal protection under the State and Federal Constitutions in excluding illegitimate children who have suffered “ pecuniary injuries ” from sharing in the proceeds of an action for the wrongful death of their putative father.
n
The petition of the illegitimate children contends that by virtue of the statutes of Puerto Rico they are required to be .recognized as legitimate by the courts of New York.
It should be stated at the very outset that the courts of this State are not required by the full faith and credit clause of the Federal Constitution to give effect to the legitimation statutes of another jurisdiction (Olmsted v. Olmsted, 216 U. S. 386, 395). However, New York’s “whole” law, i.e., our substantive law supplemented by our conflicts jurisprudence, does require us as a matter of comity to apply foreign law under many circumstances in determining legitimacy for the purpose of inheritance and, in consequence, the right to share in a recovery for the wrongful death of the putative father (Olmsted v. Olmsted, 190 N. Y. 458, affd. 216 U. S. 386, supra; Miller v. Miller, 91 N. Y. 315, 320-321; Van Voorhees v. Brintnall, 86 N. Y. 18; Bates v. Virolet, 33 App. Div. 436). As already noted, the enactment of new section 24 of the Domestic Relations Law (L. 1969, ch. 325) has removed from the area of conflicts jurisprudence all issues arising after the “marriage” of the natural parents. What remains is to determine what effect must be given by our courts to legitimation statutes of other jurisdictions which give legitimate status to illegitimates other than through the marriage of their parents.
*763 To say the least, there is a wide conflict in decision, authority and theory on this point (see, e.g., discussion in Matter of Lund, 26 Cal. 2d 472). The few decisions in this State on the point are all from lower courts and are to some extent inconsistent. (Cf., e.g., Matter of Vincent, 189 Misc. 489 with Matter of Slater, 195 Misc. 713.) This inconsistency in decision in New York is discussed in two Federal cases (see Robles v. Folsom, 239 F. 2d 562 [particularly Judge Clark’s dissent]; Perez v. Gardner, 277 F. Supp. 985). Such inconsistency exists within and between other States. (See Ann. 87 ALR 2d 1274.)
New York does appear to follow the majority rule that the status of legitimacy or legitimation by statute is determined by the personal law of the child. The personal law of the child is the law of the place of birth provided the putative father was there domiciled at the time; or the law of the jurisdiction where both the child and putative father were domiciled when the “ act ” of legitimation took place, whether by a marriage lawful in the jurisdiction or by acts of acknowledgment or recognition required by the law of that jurisdiction. Basic however to our acceptance of the personal law of the child is our requirement that the status of legitimacy or the manner of acquiring it in the foreign jurisdiction shall not violate the public policy of New York (Olmsted v. Olmsted, 190 N. Y. 458, affd. 216 U. S. 386, supra).
In Matter of Vincent (189 Misc. 410, supra), Surrogate McGarey recognized the principle discussed but held that if the statute of the foreign jurisdiction (Haiti) merely conferred on the child the right to inherit without conferring the status of legitimacy, New York as the domicile of the decedent and the situs of the property would not recognize the child as legitimate and therefore entitled to inherit by virtue of that specific requirement in our statutes governing descent and distribution. That decision is based on the principle that only the forum States’ laws govern inheritance and that recognition will only be given to the laws of a foreign State which confer the status of legitimacy, not merely the right to inherit if legitimacy is the requirement of the forum’s statutes.
It is this distinction which Judge Clark labels as “ semantics ” (see dissent Robles v. Folsom, 239 F. 2d 562, 567, supra). There appears to be justification for criticism of such distinction if one examines the legitimation statutes of other jurisdictions. These rarely confer status of legitimate but speak rather in terms of conferring upon illegitimates “ all the rights ” or the “ same rights ” as legitimates (see Krause, “ A Proposed Uniform Act on Legitimacy ”, 44 Texas L. Rev. 829 [1966]).
*764 In Matter of Slater (195 Misc. 713, supra), Surrogate Fbankenthaleb also accepted the general comity principle. He recognized as entitled to inherit in this State an illegitimate child who had achieved the status of legitimacy under the laws of Louisiana which merely required proof by “ competent evidence ” that the child was openly and notoriously recognized as such by its parents.
The question is to what extent, in view of the great advancement made in all States for the protection of illegitimates, New York is willing to recognize legitimation statutes which are different from ours? Our statute (EPTL 4-1.2) confers the status of legitimate upon the illegitimate child of the father only if a formal order of filiation declaring paternity is made within two years from birth. But nothing in our public policy should prevent our recognizing as a matter of comity different statutes of other States. As a legal matter, as well as a practical matter, we should be willing to recognize and give effect to the personal law of the child deriving from another jurisdiction. We should make three requirements:
1. That the jurisdiction be the domicile of both the child and the putative father at the time of legitimation; and
2. That the legitimation be effected either by an adversary proceeding or by the affirmative formal acknowledgment of paternity by the putative father; and
3. That we will recognize statutes conferring status or ‘ ‘ all rights” or the “ same rights” as legitimates; and as well statutes conferring particular rights, such as for example the right to inherit, or to share in a wrongful death action if that particular right is the one at issue in the forum State.
It may well be that an illegitimate of a foreign jurisdiction may become entitled to greater benefits than a New York illegitimate under the same circumstances. This is, however, so in other areas of conflict jurisprudence.
In the instant case one of the children, the eldest, was born in New York. This would require proof that the parents were on a temporary visit from Puerto Rico in order to make the law of Puerto Rico, the personal law of that child.
The other two children were born in Puerto Rico in 1957 and 1959, respectively.
A 1953 statute of Puerto Rico (31 L. P. R. A., § 441) provides: ‘ ‘ All children have, with respect to their parents and to the estate left by the latter, the same rights that correspond to legitimate children.”
The Supreme Court of Puerto Rico, interpreting that statute ruled that all children have full equality of rights with respect *765 to their parents in all respects, not just the right to inherit (Ocasio v. Diaz, 88 P. R. R. 658 [1963]).
This court will require, in addition, proof that paternity was established in an adversary proceeding or by formal acknowledgment of paternity by the putative father in Puerto Bioo.
The remaining issues are to be tried.