Millard L. Midonick, S.
By this decision hopefully clarification will be focused upon the right of an out-of-wedlock child of a father to recover, not as a distributee of his father’s intestate estate, but for pecuniary injury to the child due to the wrongful death of his father ■ — and this despite the statutory denial of such a recovery to such children unfortunate enough not to have had the benefit of paternity established in a filiation proceeding while the father was still alive.
This proceeding was commenced by the administrator and administratrix of decedent’s estate, father and sister of th§ decedent. They ask that a decree be signed settling their account, authorizing them to compromise and settle a cause *539 of action for wrongful death, fixing attorneys’ fees and disbursements, directing payment of decedent’s funeral and burial expenses, distributing the remainder of the estate to the decedent’s father and mother, and discharging the administrators. A guardian ad litem was appointed by order of the court signed on April 30, 1971 to represent Michael Angelo Agosto, child born out-of-wedlock, who claims to be the son of the decedent. The guardian filed objections to the accounting.
Adolfo Agosto Perez, the intestate decedent, was killed in a motor car accident on August 8, 1968. His only asset is a cause of action for wrongful death. The attorneys for the administrators have received an offer of $12,500 in settlement of that claim. The two-car accident in which decedent was killed gave rise to suits by three different plaintiffs, and the $12,500 offer represents one third of entire policy limits of the two defendants’ insurance coverage.
The administrators’ petition asks that the entire amount, after payment of attorneys’ fees and debts and expenses, be paid to the decedent’s mother and father. The guardian ad litem contends that his ward is entitled to the full amount of the recovery. The Department of Social Services entered a claim against the estate in the amount of $6,600 for the support of the decedent’s out-of-wedlock child. Claims by the Department of Social Services for payments made to support the child of decedent cannot be satisfied from the funds recovered in a wrongful death proceeding. (EPTL 5-4.4; Matter of Maynard, 37 Misc 2d 184 [1962].) Since the only assets of this estate are wrongful death proceeds, the Department of Social Services has withdrawn its lien. Recovery for pain and suffering belongs to the decedent and his estate; recovery for wrongful death, apart from pain and suffering, do not become estate assets, but redound to the benefit of those who lose pecuniary support by the wrongful death. By a written agreement with the Department of Social Services of the City of New York the decadent acknowledged paternity of the infant Miguel A. Agosto, the objectant in this proceeding, and agreed to pay the sum of $6.75 per week for his child’s support. No evidence was offered to show pecuniary loss on the part of the mother or father as a result of decedent’s death. Decedent’s mother died after decedent.
The primary issue in this proceeding is whether the New York statute, which denies recovery to an out-of-wedlock minor for the wrongful death of his putative father where no order of filiation had been made before the father’s death, violates *540 the Equal Protection Clauses of the State and Federal Constitutions (N. Y. Const., art. I, § 11; U. S. Const., 14th Arndt.). The New York wrongful death statute provides that damages recovered in any action for wrongful death “ are exclusively for the benefit of the decedent’s distributees and, when collected, shall be distributed to the persons entitled thereto under [EPTL] 4 — 1.1 ’’. (EPTL 5-4.4, subd. [a].) EPTL 4-1.1 is the New York statute which governs the descent and distribution of intestate estates. EPTL 4-1.2 governs the inheritance rights of illegitimates, providing in what circumstances the out-of-wedlock child will take in intestacy as a distributee under EPTL 4r-l. 1. EPTL 4-1.2 (subd. [a]) provides:
“ (2) An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child.
“ (3) The existence of an agreement obligating the father to support the illegitimate child does not qualify such child or his issue to inherit from the father in the absence of an order of filiation made as prescribed by subparagraph (2).”
Petitioners argue that since no order of filiation declaring the objectant to be the child of the deceased was ever entered, EPTL 4 — 1.2 and the incorporation of EPTL 4-1.1 into the wrongful death statute by EPTL 5-4.4 operáte to bar objectant from any recovery for decedent’s wrongful death. Objectant urges that EPTL 5-4.4 denies equal protection to illegitimates and is, therefore, unconstitutional.
Three recent decisions serve as guides to the court in this area. The first is Levy v. Louisiana (391 U. S. 68 [1968]). In that case the Louisiana Supreme Court had construed their State wrongful death statute to deny recovery in wrongful death to an illegitimate child. In an opinion by Mr. Justice Douglas, the Supreme Court of the United States reversed, holding that so construed the statute denied equal protection of the law, and was therefore unconstitutional. The court said that:
‘1 Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother. These children, though illegitimate, were dependent on her; she cared for them and nurtured them; * * * in her death they suffered wrong in the sense that any dependent would. We conclude that it is invidious to discriminate against them *541 when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done to the mother.” Levy v. Louisiana, supra, p. 72.)
The case at bar concerns whether such a denial of recovery for the death of an illegitimate’s father is also unconstitutional. The same issue was presented in a recent New Jersey case. (Schmoll v. Creecy, 54 N. J. 194 [1969].) The Schmoll case involved a statute that was comparable to the New York law, in that it allowed an illegitimate child to recover for the wrongful death of his mother, but not for the death of his father. The New Jersey court, extending the Supreme Court’s reasoning in Levy, held their statute unconstitutional, reasoning: “the underlying principle [of Levy] must be that when children suffer tortious injury by the wrongful death of a parent, their legitimacy is irrelevant to the tort-feasor’s liability, and hence it is invidious to grant a remedy to the legitimate and withhold it from the illegitimate child. Under that thesis, it can be of no logical moment whether that parent was the mother or the father.” (Schmoll v. Creecy, supra, p. 201.)
In Matter of Ortiz (60 Misc 2d 756, 762 [1969]) Surrogate Sobel of Kings County held that EPTL 5-4.4 denies equal protection as guaranteed by the State and Federal Constitutions in precluding illegitimates, who have suffered pecuniary loss due to the death of their putative father, from recovering in a wrongful death action. Surrogate Sobel weighed the distinctions between the mother-child relationship and the father-child relationship which would serve as a valid basis for the Legislature to distinguish between them in a wrongful death statute. (Matter of Ortiz, supra, p. 760.) He recognized that “ some difference does exist in such relationships at least with respect to the greater difficulty in ascertaining paternity.” (Matter of Ortiz, supra, p. 761.) However, Surrogate Sobel concluded that such a difference is not a valid basis for a legislative distinction, when a statute for wrongful death is involved, for by its very nature, wrongful death operates as a link to paternity only when the putative father during his lifetime is proved to have supported the child; without this no damage can be suffered in the wrongful death. He agreed with the courts in Levy and Schmoll in declaring that legitimacy or illegitimacy of birth has no relation to the wrong inflicted upon a child by the tortious death of its parent. (Matter of Ortiz, supra, p. 762.) A second ground in Ortiz indicated possible legitimacy of the child by a valid common- *542 law marriage, but the case at bar concerns an illegitimate unaided by possible marriage of his parents.
We agree with Surrogate Sobel and with the New Jersey Supreme Court, this case depending on paternity alone, proved not by an order of filiation but by a written agreement to support made by the putative father. We find that EPTL 5-4.4 denies equal protection as guaranteed by State and Federal Constitutions because it denies an illegitimate recovery for the pecuniary loss suffered by the wrongful death of his putative father. There is no rational legislative purpose that can justify making a distinction between the pecuniary loss suffered by the wrongful' death of an illegitimate’s mother and that suffered by the wrongful death of his father. (Schmoll v. Creecy, supra, p. 201; Matter of Ortiz, supra, p. 761.)
Since there is an untenable statutory distinction between wrongful death of a father or.a mother, we must address the problem of the remedy: whether to include protection for illegitimates in construing the New York wrongful death statute or to deny the entire statute effect because of its constitutional defects. (Schmoll v. Creecy, supra, p. 202.) New York has a long history of severing provisions of statutes, ignoring invalid provisions and sustaining these statutes so far as they are valida Such remedy is fashioned on the basis or principle, not of form. (People ex rel. Alpha Portland Cement Co. v. Knapp, 230 N. Y. 48, 60, cert. den. 256 U. S. 702 [1920].)
“ The question is in every case whether the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. The answer must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory tule will function if the knife is laid to the branch instead of at the roots.” (People ex rel. Alpha Portland Cement Co. v. Knapp, supra, p. 60.)
In this case, the question is whether the Legislature was so determined to deny recovery to illegitimates of fathers that it would prefer the wrongful death statute to be totally void. (Schmoll v. Creecy, supra, p. 203.) Clearly no such intention of the Legislature can be inferred especially in view of the mandate included in article I (§ 16) of the New York State Constitution, which provides that “ [t]he right of action now existing to recover damages for injuries resulting in death, shall never be abrogated” (derives from N. Y. Const., 1894, art. I, § 18). Therefore, we will follow the example of the *543 New Jersey Supreme Court in holding that for purposes of the wrongful death statute illegitimates are to be deemed the children of both their natural parents whether such parent be female or male.
By the same logic, since we are now holding that no order of filiation at all during the lifetime of the father is requisite, so it follows that a valid order of filiation made at any time before or after two years from the birth of the child, is as good as the limited two years from birth set up as a totally illogical condition by EPTL 4-1.2 (subd. [a], par. [2]). Many circumstances are provided in section 517 of the Family Court Act and judicial construction thereunder, avoiding the two-year bar or limitation; consequently, for EPTL 4-1.2 (subd. [a], par. [2]) to substitute an inflexible rule totally unjustified and at odds with the statutory plan having to do with paternity suits as such, can only create another unconstitutional inequality of treatment between infants because of their age differences at the institution of páternity proceedings. As a single illustration, if a putative father voluntarily and generously supports his out-of-wedlock child, for, say, seven long years, thus lulling the mother into no need to sue to establish paternity until he stops supporting the child, the two-year Statute of Limitations or the two-year condition (Family Ct. Act, § 517) is expressly tolled, but this tolling is overlooked by the unconstitutional illogic of the unthought-through EPTL 4-1.2 (subd. [a], par. [2]). In the very case at bar the decedent father signed his agreement with the Department of Social Services of the City of New York and acknowledged same on the 31st day of August, 1966 when the objectant child herein, born on June 17, 1961, was already four years old; this very agreement eliminated the before-two-year-from-birth rule for purposes of a paternity proceeding if one had been thought necessary; since we are granting filiation rights to this child based upon an agreement four years after his birth, there would be even stronger proof of his paternity if the Family Court had issued an order of filiation after this agreement; and so, orders of filiation, assuming only that they are valid, must be accorded full weight whether they stem from proceedings commenced before or after the child was two years of age. Consequently, the last 20 words of EPTL 4-1.2 (subd. [a], par. [2]) must be disregarded as patently setting up as unconstitutional invidious distinction, unequally protecting children depending upon their age at the institution of successful paternity suits.
*544 The next question concerns whether sufficient proof was adduced at the hearing to show that the objectant was the child of the decedent, and that the objectant suffered pecuniary loss through decedent’s death. The objectant has introduced an agreement signed by the decedent in which the decedent admitted paternity of Miguel A. Agosto, the objectant, and agreed to support him to the extent of $6.75 per week. This agreement was made between the decedent and the Department of Social Services of the City of New York. We find that this instrument is sufficient to establish both the facts of paternity and of pecuniary loss. Surrogate Sobeo in Matter of Ortiz (60 Misc 2d 756, supra [1969]) discussed whether foreign legitimation statutes should be recognized by New York as a matter of comity. He held that as a legal and practical matter such statutes should be recognized as long as there is a requirement of either judicial determination of paternity or an affirmative formal acknowledgment of paternity by the putative father. (Matter of Ortiz, supra, p. 764.) Such an acknowledgment in New York should be sufficient proof of paternity for illegitimates as well.
EPTL 5-4.4 (subd. [a], par. [1]) provides that damages recovered for wrongful death shall be distributed for the benefit of the decedent’s distributees “ in proportion to the pecuniary injuries suffered by ’ ’ such distributees. The measure of pecuniary injury has been defined as the amount of support which á person could reasonably have expected to receive from the decedent if he had survived. (Loetsch v. New York City Omnibus Corp., 291 N. Y. 308 [1943]; Matter of Lilien, 139 N. Y. S. 2d 128 [1955].)
No evidence of pecuniary injury on the part of the parents of the decedent was introduced. The child was injured at least to the extent of $6.75 per week for the 14 years between the time his father was killed and the time the child will reach majority. We can infer that had he lived, the father’s earning capacity should have improved as skills and experience increase.
After expenses, attorney’s fees and guardian ad litem fees, there will be only approximately $6,000 left of the wrongful death settlement. The entire net amount is to be given to decedent’s out-of-wedlock child, he being the only distributee (for wrongful death purposes) who suffered any pecuniary injury at all by reason of the wrongful death of his father, the decedent.
*545 Finally, there arose at the hearing the problem of custody of the out-of-wedlock child here involved. The paternal grandfather of the child strongly urged that the child be awarded to his custody to live with him in Puerto Rico, the paternal grandmother having died. The child had been, since close to its birthdate of January 17, 1961, voluntarily given by the mother into the custody of the Department of Social Services of the City of New York and for boarding custody and care with St. Dominick’s Home. The mother of the child was present in the courtroom but not seeking custody. The Department of Social Services strongly opposed paternal grandfather’s custody at this late date (age 10 years) in the child’s life, preferring at long last to bring a permanent neglect proceeding against the mother in the Family Court in order to free this child for adoption. Under these circumstances, the application for custody by the paternal grandfather (another indication that paternity was truly that of their decedent son) was and is denied with leave for him to renew his application in the Family Court proceeding to be instituted. In that court, if permanent neglect should be found for the purpose of disengaging the child from his mother’s rights, the social work and probation services available to the Family Court would in this type of case better serve the interests of this child. The paternal grandfather’s home can be considered with the help of probation located in Puerto Rico which can report to the New York Family Court via probation, or foster care in an adoptive home may become available and may appear preferable to boarding home care. The custody of the child is, therefore, left temporarily, on the mother’s voluntary consent, without change, and subject to further proceedings in a court of competent jurisdiction.
The contingent fee of the attorney who succeeded in recovering $12,500 for wrongful death by settlement is hereby limited to $3,500 plus $66 disbursements; the guardian ad litem’s claim for $1,000 through final decree is moderate in view of the effort and success he has, with the help of his attorney, achieved for his ward; the travel expenses of the administrators are limited and allowed to the extent of $150 for each.
The entire net estate after these charges shall be deposited for the benefit of the infant child of the decedent.