William J. Regan, S.
The decedent died on October 13, 1974 in the City of Buffalo. His intestate distributees are six sisters and four brothers. All of said distributees have signed a waiver of administration requesting that the court issue general letters of administration to the petitioner David Peacock.
A cross petition for letters of administration has also been submitted by Gloria Jean Thomas, alleging to be the daughter of the deceased. The petitioner,’ David Peacock, contends that Gloria Jean Thomas is at most a child born out of wedlock (General Construction Law, § 59) and is therefore not a distributee under SCPA 1001. The general assets of the estate are estimated to be as high as $20,000. It appears also that a cause of action for personal injury and wrongful death exists and will be commenced upon the issuance of letters.
The court is confronted with three basic issues in determining which petition for administration should be granted. The first issue concerns the claim by the petitioner, Gloria Jean Thomas, that she is the legitimate daughter of the deceased and therefore has a priority to be awarded letters of administration. A hearing was had and proof submitted as to her legitimacy and testimony given with respect to a common-law marriage which allegedly existed at the time of the birth of the petitioner, Gloria Jean Thomas. The petitioner contends that she was born of a lawful common-law marriage between the deceased, Clint Thomas, and her mother, Lou Jackson, whose maiden name, coincidentally, was Thomas.
Lou Jackson testified that she and the deceased lived together in the State of Alabama for a short period of time and subsequently moved to the State of Florida and remained in Florida for a period of approximately three years until the deceased moved to Buffalo, New York. Mrs. Jackson testified that she had given birth to a son approximately six years prior to the birth of the petitioner, Gloria Jean Thomas, and *893 that the father of said child was not the deceased, Clint Thomas; that this child was born in the State of Alabama prior to her cohabitation with the deceased. The mother of petitioner further testified that she refused to marry deceased in the State of Alabama. Her refusal to marry the deceased was again made in the State of Florida subsequent to the birth of the petitioner, Gloria Jean Thomas. Lou Jackson testified that she subsequently entered into a ceremonial marriage with Mr. Jackson in Buffalo, New York, and that in applying for her marriage license, stated that she had not been previously married.
In order for this court to award letters to the petitioner, Gloria Jean Thomas, it must find that she is the legitimate child of the deceased and therefore of necessity must resolve whether or not the deceased and Lou Jackson entered into a common-law marriage as defined by the State of Florida at the time of their residence therein.
Capacity and mutual consent are essential to a common-law marriage which were recognized in the State of Florida at the time of petitioner, Gloria Jean Thomas’s, birth. (Fla. Domestic Relations Law, § 741.211.) In LeBlanc v Yawn (99 Fla 328), the Florida court held that the best evidence of a common-law marriage was the testimony of the contracting parties. The Florida decisions have consistently held that a mere sojourn or living together for a period of time does not support the common-law marriage relationship. (Edge v Rynearson, 107 Fla 461.) A common-law marriage in Florida is established generally by evidence of cohabitation and repute and of an agreement between the parties per verba de praesenti to be husband and wife. The agreement between the parties is an essential element in order to substantiate the common-law relationship. (McBride v McBride, 130 So 2d 302 [Fla].) A meretricious relationship without evidence to establish transition to one of matrimony will remain meretricious.
In view of the testimony of Lou Jackson, the court is unable to find that the petitioner, Gloria Jean Thomas, has sustained her burden of proof that a common-law marriage existed between the deceased and Lou Jackson. The proof at most infers that the petitioner is a child born from a meretricious relationship and out of wedlock.
Petitioner’s counsel argues further that a child born out of wedlock is entitled to letters inasmuch as he has pecuniary rights in the settlement of any wrongful death action and *894 relies on Levy v Louisiana (391 US 68). EPTL 4-1.2 (subd [a], par [2]) provides that a child born out of wedlock is considered the legitimate child of its father for the purpose of inheritance only if an order of affiliation declaring paternity is made by a court of competent jurisdiction. No such order has been produced in this proceeding and the court must conclude that the petitioner, Gloria Jean Thomas, is not a distributee of the deceased and therefore not entitled to letters of administration.
The court acknowledges several Surrogate opinions declaring the aforesaid section unconstitutional in that it denies to infants the equal protection of law guaranteed by the respective equal protection clauses of both the United States and New York State Constitutions. (Matter of Johnson, 75 Misc 2d 502; Matter of Ortiz, 60 Misc 2d 756; Matter of Perez, 69 Misc 2d 538.) Although a child born out of wedlock might be entitled to share in the proceeds of a tort action, this court will not declare said sections unconstitutional to the extent that said child falls within the definition of distributee and therefore entitled to letters.
The final argument made on behalf of the petitioner, Gloria Jean Thomas, is that she is entitled to letters of administration because she is entitled to inherit under the laws in and for the State of Florida. All the parties involved in this proceeding, including the deceased, were domiciled in the State of New York on the date of death of the deceased. Counsel argues that the deceased acknowledged Gloria Jean Thomas as his child in the designation of Gloria Jean Thomas as a beneficiary of an insurance policy through his employer. A personnel officer of his employer testified as to the deceased’s designation of Gloria Jean Thomas as beneficiary.
Subdivision (1) of section 731.29 of the Florida Probate Law provides "Every illegitimate child is an heir * * * of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father.” The petitioner claims, therefore, that in view of the deceased’s acknowledgement, she is an heir of the deceased and entitled to inherit from him pursuant to the aforesaid provision of the Florida law. The case of Matter of Sherman (76 Misc 2d 551) is cited by the petitioner, Gloria Jean Thomas, as authority for her position.
The basic question is whether the law of the State of Florida or the law of the State of New York should apply in *895 determining the descent and distribution of the estate of the deceased. Under the Sherman case and New Jersey cases cited therein for support, the courts held that the law of the place of residence of the child at the time of the acknowledgement by the father determines the status of the child as to his eligibility to inherit. In view of the fact that the residence of petitioner was New York State at the time that the acknowledgement was made, the petitioner under the laws of the State of New York would be ineligible to inherit.
This court cannot, in administering the estate of the deceased, apply the laws of the statutes of descent and distribution enacted under the laws of Florida by virtue of the fact that the deceased may have resided at one point or another in the State of Florida. The deceased died domiciled in the State of New York and the court is compelled to apply the descent and distribution statutes of New York and not any other jurisdiction.
It is the opinion of this court, therefore, that limited letters of administration be awarded to petitioner David Peacock, imposing, however, the condition that any settlement reached in the action for wrongful death be remitted to this court for allocation.