John D. Bennett, S.
Objections have been interposed in this intermediate accounting proceeding by the guardian of an alleged distributee of the decedent and all parties concerned *164 agreed to submit the matter to the court on an agreed statement of facts.
On November 15,1954, the guardian petitioned the Children’s Court of the County of Nassau to adjudge the decedent to be the father of her child and to compel him to provide support of said child pursuant to section 122 of the Domestic Relations Law (now Family Ct. Act, art. 5). At the time the petition was filed the child was unborn.
On December 1, 1955, the guardian and the decedent entered into an agreement concerning the petition filed by the guardian in the Children’s Court. The said agreement was entered into pursuant to section 121 of the Domestic Relations Law (now Family Ct. Act, § 516) and provided for the support of the child and for the paying of certain lying-in expenses. In the afore-mentioned agreement, the decedent specifically admitted that he was the father of the child that was born to the guardian on February 14,1955 and after reciting the whereas clauses, the parties specifically agreed that the decedent was the father of the child and would provide for the support of said child.
On December 13, 1955, Judge Gehrig of the Children’s Court signed an order which provided in part as follows: “ Ordered, that the agreement of compromise between * * * dated December 1, 1955, be and it is, in all respects, confirmed and approved ”. (Italics supplied.)
It is the position of the guardian that her son is entitled to take as a distributee under the decedent’s estate. The administratrix and the attorney for the guardian of another distributee of the decedent contend that the child cannot share as a distributee of the within estate since there was no order of filiation declaring the child to be the son of the decedent. They also take the position that at the time the parties entered into the aforementioned agreement the alleged illegitimate child could not inherit from his putative father.
Section 83-a of the Decedent Estate Law (now EPTL 4 — 1.2), which became effective on March 1, 1966, provides under paragraphs b and c of subdivision 1 as follows:
“ b. An illegitimate child is the legitimate child of his father so that he and his issue inherit from his father if a court of competent jurisdiction shall have found the decedent to be the father of such child and shall have made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child.
“ c. The approval of any agreement or compromise without the making of an order of filiation declaring paternity shall not *165 enable the child to inherit from the respondent in any such proceeding. ’ ’
The decedent died on December 6, 1966 and the court finds that the within estate is subject to the two paragraphs of subdivision 1 of section 83-a of the Decedent Estate Law. The fact that the proceedings in the Children’s Court took place prior to the effective date of said section is of no significance and the question of whether or not said statute has retroactive effect has no effect as to the determination of the issues involved herein. It is the date of the decedent’s death that is crucial.
There is no question that if the decedent solely entered into an agreement with the mother of the infant to provide for support, education and maintenance of said child and an order was entered by a court of competent jurisdiction concerning same, the illegitimate child could not take nor could the illegitimate child take solely if the putative father acknowledged the child to be his.
The Fourth Report of the Temporary State Commission on Law of Estates (N. Y. Legis. Doc., 1965, No. 19), Report No. 1.8A, at pages 240 and 266, clearly sets forth the purpose of the statute concerning the rights of illegitimate children to take as a distributee of the estate of their father. At page 241 of said report, the researchers felt that a filiation order could be based on the voluntary acknowledgment of the putative father. The researchers also were concerned that proper precaution should be made to protest innocent men from unjust paternity claims and it is for this reason that no informal methods of acknowledgment would be approved.
The court finds that the putative father admitted that he was the father of said child in the agreement which he executed on December 1,1955 and that the order of Judge Gehbig confirmed the admission of the putative father, and thereby found that he was the father of said child. The result of same is an order of filiation. The fact that the agreement and the order of Judge Gehbig refers to section 121 of the Domestic Relations Law did not limit same to the support, education and maintenance of the child for the parties themselves went further.
This is not a case where a party desired to enter into a compromise because he wanted to either save embarrassment and protracted litigation, or there was a mere possibility that he may have fathered the child. Here the putative father admitted that he was the father and Judge Gehbig in his order stated that if he admitted he is the father then the court will also find that he was the father of said child. Judge Gehbig in his order *166 of December 13, 1955 in all respects confirmed and approved the agreement of December 1,1955.
The parties opposing the relief sought by the guardian contend that the order .signed by Judge Gehrig was not a filiation order pursuant to section 127 of the Domestic Relations Law but was merely an order based on section 121 of the Domestic Relations Law concerning an agreement to compromise the issue concerning support, education and maintenance of an alleged illegitimate child. Even under section 127 of the Domestic Relations Law, the court could have solely found that the respondent was responsible for the support, education and maintenance of a child born out of wedlock without making an order of filiation. However, here the court definitely found that the decedent was the father of the child and accordingly said child is a distributee of the within estate. It was an order of filiation in addition to approving the support agreement.
The court has given careful consideration to the services of the attorney performed for the administratrix and will allow him at this time $5,000 on account of services rendered to the within estate and the court will fix said attorney’s fee when the estate is completed and the final accounting has been filed. The attorney in his affidavit of services indicates that he not only performed legal services but a great deal of work which should have been completed by the administratrix. The court has considered same in making a determination as to the amount the court will allow at this time in view of the fact that the administratrix has waived commissions and it is obvious the attorney completed the bulk of the administration work.