EARL R. HOLDEN, as Administrator of the Estate of TERRY HOLDEN, Deceased, Appellant, v. CHARLOTTE ALEXANDER, Respondent, et al., Defendant.

Second Department, October 24, 1972.

*Gilman & Gilman* (*Benjamin Fried* of counsel), for appellant.

*Schleider & Owen* (*Joseph G. Owen* of counsel), for respondent.

LATHAM, J. In this action for damages for the wrongful death and pain and suffering of the plaintiff's intestate, the plaintiff administrator appeals from an order of the Special Term in Orange County which granted a motion by defendant Charlotte Alexander to dismiss the first cause of action, for wrongful death, on the ground that the complaint fails to state a cause of action. The principal issue, which appears to be one of first impression for an appellate tribunal in this jurisdiction, is whether a putative father of an illegitimate daughter who died intestate may maintain an action for the child's wrongful death, when there exists no prior order of filiation and there are no known surviving distributees.

On May 21, 1966, Terry Holden (the plaintiff's intestate) was a passenger in an automobile owned by defendant Charlotte Alexander and operated by the latter's intestate, Charles Alexander. The vehicle left the highway and struck a tree, causing injuries to Miss Holden from which she died five months later. The plaintiff was duly appointed administrator with limited letters.

Miss Holden was born out of wedlock on March 22, 1949. Her mother died in 1961, without being survived by any other known relatives. The plaintiff administrator claims that he is Miss Holden's father and that he and his wife reared her from the time she was seven days old until she was placed in a foster home by the Orange County Welfare Department, just shortly before her premature death.

The plaintiff never obtained an order of filiation declaring him to be the father; nor does it appear that any adoption or other legal proceedings were ever instituted to establish a legal relationship between him and his intestate sufficient to have enabled either to inherit from the estate of the other as a distributee (EPTL 4-1.2, subd. [a], par. [2]; subd. [b]).

The defendant, in support of her motion to dismiss the wrongful death cause, contended that there were no distributees surviving the plaintiff's intestate and, therefore, pursuant to the wrongful death statute (EPTL 5-4.1), an action for wrongful death could not be maintained. The Special Term, in granting the motion, rejected the plaintiff's contentions that EPTL 4-1.2 and 5-4.1 were unconstitutional, stating that the Legislature did not act arbitrarily when it excluded fathers from being dis-

tributees of illegitimate children unless paternity had been established in a court proceeding instituted within two years following the birth of the child.

On this appeal, the plaintiff seeks, essentially, to have EPTL 4-1.2 (subd. [a], par. [2]; subd. [b]) declared unconstitutional insofar as those provisions of the statute operate to bar him from any recovery for the wrongful death of Miss Holden by precluding him from being her distributee in the absence of an order of filiation.

EPTL 5-4.1 states, *inter alia,* that an action may be maintained to recover damages for wrongful death by "the personal representative, duly appointed in this state or any other jurisdiction, of a decedent *who is survived by distributees*" (emphasis added). Pursuant to EPTL 5-4.4 (subd. [a]), the damages recoverable in such an action are solely for the benefit of the distributees of the decedent, who are determined by reference to EPTL 4-1.1, which governs the order of inheritance in intestacy.

An illegitimate child is deemed to be the legitimate child of his father, so that either may inherit from the other, provided an order of filiation declaring paternity is made in a proceeding instituted during the mother's pregnancy or within two years following the child's birth (EPTL 4-1.2, subd. [a], par. [2]; subd. [b]).

The crux of this appeal, therefore, involves the determination of whether the application of the above statutes to the facts of this case, and especially of EPTL 4-1.2, with its requirement of an order of filiation, would operate to deprive the plaintiff of equal protection of the law. In arriving at a determination, several recent decisions serve as valuable guides.

In *Levy* v. *Louisiana* (391 U. S. 68), the Supreme Court of the United States in reversing the Supreme Court of Louisiana, which had construed its State's wrongful death statute to deny recovery to illegitimate children for the wrongful death of their mother, held that, so construed, the Louisiana statute denied equal protection of the law and was, therefore, unconstitutional. As the court stated, "Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother" (p. 72).

In the companion wrongful death case of *Glona* v. *American Guar. Co.* (391 U. S. 73), a Federal District Court in Louisiana granted summary judgment to the defendant on the ground that, under Louisiana law, a mother had no right of action for the death of her illegitimate son. The Court of Appeals affirmed,

rejecting the contention that the Equal Protection Clause of the Fourteenth Amendment was violated. The Supreme Court reversed, in an opinion by Mr. Justice Douglas, stating, *inter alia*, "A law which creates an open season on illegitimates in the area of automobile accidents gives a windfall to tortfeasors. * * * To say that the test of equal protection should be the 'legal' rather than the biological relationship is to avoid the issue" (pp. 75-76).

Next came the decision in *Labine* v. *Vincent* (401 U. S. 532), wherein a trial court in Louisiana had ruled that, under its State law, collateral relations took property of a decedent to the exclusion of the decedent's daughter, who, although she had been acknowledged by her father, was not legitimated. The Supreme Court, in upholding the constitutionality of the statute, distinguished its decisions in *Levy* and *Glona* (*supra*), pointing out that a State has a valid interest in "directing the disposition of property left within the State" (p. 536, n. 6). Thus, the Supreme Court has held that, while a State may constitutionally discriminate between legitimates and illegitimates when dealing with intestate succession, it may not do so in instances involving wrongful death actions (at least between mother and child).

Several recent lower court cases in New York follow and give further expression to this line of reasoning.

In *Matter of Ortiz* (60 Misc 2d 756, 759), no rational legislative purpose was found which justified discrimination in the application of the wrongful death statute to either the mother-child or father-child relationship. Noting that under wrongful death statutes recovery by illegitimates in no way impaired recovery by legitimates, the court concluded that the statute governing distribution of damages recovered for wrongful death (EPTL 5-4.4) denied equal protection, by excluding illegitimate children who suffered pecuniary loss from sharing in the proceeds of an action for the wrongful death of their putative father (p. 762).

In *Matter of Ross* (67 Misc 2d 320), both the mother and the illegitimate daughter of the decedent cross-petitioned for limited letters of administration for the purpose of maintaining an action for his wrongful death. In suggesting that each petitioner consent to the appointment of the other (indicating that both would be appointed), Surrogate Sobel pointed out that the *Levy* (*supra*) decision "commanded a 'judicial' amendment of the wrongful death distribution statute," stating that "the statute (EPTL 5-4.4) must be read—'The damages * * * are exclusively for the benefit of the decedent's distributees *which*

*shall include illegitimate children'* " (p. 323; emphasis in original).

In *Matter of Perez* (69 Misc 2d 538), the decedent's only assets were the damages for his wrongful death. The court ruled that the damages belonged to the illegitimate child of the decedent and not to the decedent's parents, who had failed to demonstrate pecuniary loss. The basis for its decision was a written acknowledgment of paternity, executed by the decedent and filed with the Department of Social Services when the illegitimate child was four years old. Surrogate MIDONICK held that no order of filiation during the lifetime of the decedent was required and that, if one were entered, it need not be restricted to the two-year period stated in the statute (EPTL 4–1.2). He concluded that the last 20 words of EPTL 4–1.2 (subd. [a], par. [2]) " must be disregarded as patently setting up as [*sic*] unconstitutional invidious distinction, unequally protecting children depending upon their age at the institution of successful paternity suits " (p. 543; cf. *Matter of Anonymous,* 60 Misc 2d 163).

Finally, in *Prudential Ins. Co.* v. *Hernandez* (63 Misc 2d 1058), the decedent acknowledged paternity of his two illegitimate children by separate, undisputed instruments given in support of their birth registration. He left a life insurance policy, but failed to designate a beneficiary. As he was not survived by a widow, his parents sought to recover the proceeds of the insurance policy over the claims of the illegitimate children, relying on EPTL 4–1.2 as support for their contention that the illegitimate children could not inherit from their father unless an order of filiation was entered during the lifetime of the father. Despite the fact that no such order had ever been sought, the court held in favor of the illegitimates, stating (pp. 1059–60) : " The better and more modern view is to abolish the unchosen birthgiven shackles of illegitimacy and to confer filial equality wherever possible. In this view, and applicable to the instant facts, the distinction between parents described by EPTL 4–1.2 is without a rational purpose in excluding illegitimate children from inheriting from an intestate father. The application of the statute appears even more irrational when examined under the light of the unrefuted formal acknowledgments of paternity."

It is to be borne in mind that our concern on this appeal is not strictly with the right to inherit, but rather with the right to maintain an action for wrongful death, which necessarily brings into play related inheritance and wrongful death statutes.

I am not unmindful of the fact that there has not been a conclusive showing of paternity herein. However, the appellant's

name was placed on the decedent's birth certificate as the father (in 1950) and on her baptismal certificate (in 1957). Nor is this the average situation wherein the relationship between a child born out of wedlock and its father is a limited one (even with an order of filiation). In such a situation, he rarely sees the child, does not take it into his home and has nothing to say about the manner in which it is reared. The usual relationship between father and child is absent. There the father is responsible for the support and education of the child during its minority, with no responsibility being owed by the child to the father whatsoever (*Matter of Crawford,* 64 Misc 2d 758).

In the case at bar, the deceased was taken into the home of the appellant, the putative father, and his wife when the deceased was seven days old and she remained there until shortly before her death. The relationship was that of parent and child; and the bond between them could not have been made any stronger by an order of filiation.

Nor can it be argued that the appellant acknowledged his paternity of the decedent for anticipated pecuniary gain in a wrongful death action which arose some 17 years following her birth. If anything, his actions can be said to constitute declarations against interest (cf. *Chadwick v. Fonner,* 69 N. Y. 404).

I find, therefore, that the appellant has competently established his paternity of the deceased, by open and complete acknowledgment. I further find that although no order of filiation was entered, still, under these facts and in accordance with the modern trend in the law to " abolish the unchosen birthgiven shackles of illegitimacy and to confer filial equality wherever possible " (*Prudential Ins. Co. v. Hernandez,* 63 Misc 2d 1058, 1059, *supra*), the appellant is entitled to be treated as a distributee for the purpose of maintaining the cause of action for wrongful death.

In furtherance of the above findings, EPTL 4-1.2 (subd. [a], par. [2]; subd. [b]) is hereby declared unconstitutional *as applied and limited* to the specific facts of the case at bar (see *Prudential Ins. Co. v. Hernandez, supra*), as setting up an invidious discrimination between legitimates and illegitimates by requiring that an order of filiation be entered before an illegitimate or its father may be treated as a distributee of the other. It is to be noted that this decision does not defeat the sound legislative purposes of the statutes to protect against fraudulent claims *of inheritance* by illegitimates or their putative fathers (see Fourth Report of the Temporary State Comm. on Law of

Estates [N. Y. Legis. Doc., 1965, No. 19], Appendix 18, Report No. 1.8A, pp. 233–271).

To hold otherwise would seem not only to create a windfall for tort-feasors who happen to be fortunate enough to have committed their tortious acts against illegitimates (*Glona* v. *American Guar. Ins. Co.*, 391 U. S. 73, *supra*), but also to render a gross injustice to this particular plaintiff, who would have suffered a wrong without being provided any remedy.

The secondary issue presented by the appellant is that the respondent is attempting to collaterally attack his letters of administration, duly granted by the Surrogate's Court. But the respondent has neither sought to have the letters reversed, modified, suspended nor revoked (SCPA 703). However, had she attempted to collaterally attack such authority in this action, she would not have been permitted to do so (see *Baccelli* v. *Delaware & Hudson Co.*, 138 App. Div. 623; *Lowman* v. *Elmira, Cortland & Northern R. R. Co.*, 85 Hun 188, affd. 154 N. Y. 765).

Accordingly, the order under review should be reversed, with $10 costs and disbursements, and the motion to dismiss the wrongful death cause of action denied.

MUNDER, Acting P. J., GULOTTA and CHRIST, JJ., concur; BENJAMIN, J., dissents and votes to affirm.

Order reversed, with $10 costs and disbursements, and motion denied.