Con. G. Cholakis,
J. Ronald J. Niles was killed in an automobile accident on August 22, 1970. Thereafter, and on September 2, 1970, his father, Harold Niles, Sr., was appointed administrator of his estate. An action was commenced in Rensselaer County Supreme Court by said administrator to recover for wrongful death. Ultimately, $7,000 was offered in settlement of the claim for the death of the 21-year-old decedent.
By a petition dated August 13, 1974, the administrator requests an order authorizing him to compromise and settle the pending action for wrongful death, for the payment of certain expenses and declaring him and his wife Carrie Niles the sole distributees of the decedent. By a previous petition, dated April 19, 1974, James W. Smith as Law Guardian of Jill *938 Marie Beninati, a five-year-old infant, seeks to have her declared the sole heir of the decedent. A hearing was conducted on October 2, 1974 at which time both applications were heard by the court.
During the hearing, various witnesses testified and certain exhibits were introduced into evidence. As a result of the testimony and exhibits the court makes the following factual determinations: (1) Harold Niles, Sr., and Carrie Niles are the natural parents of the decedent, Ronald J. Niles. (2) That on August 18, 1969 one Joanne Marie Beninati appeared in Rensselaer County Family Court with Ronald J. Niles and alleged that he was the father of her as yet unborn child. (3) The said Ronald J. Niles admitted and agreed that he was the father of Joanne Marie Beninati’s unborn child. (4) Joanne Marie Beninati gave birth to Jill Marie Beninati on January 17, 1970. (5) Ronald J. Niles was killed in an automobile accident on August 22, 1970. (6) An order declaring Ronald J. Niles to be the father of the child of Joanne Marie Beninati was signed by the Family Court Judge on September 2, 1970. (7) A second order declaring the decedent to be the father of the child as of January 17, 1970 was signed on December 20, 1973.
Based upon the evidence before it the court must decide whether the parents of the decedent, on the one hand, or the infant, Jill Marie Beninati, on the other, should be declared entitled to receive the proceeds of the offered settlement.
EPTL 4-1.1 clearly states that a decedent’s issue will take precedence over a decedent’s parents. Had the said child been born as a result of decedent’s marriage there would be no question before the court. However, decedent had never been married and, at most, the infant can be only the illegitimate child of the decedent. EPTL 4-1.2 (subd [a], par [2]) states that an illegitimate child can inherit from its father, if a court of competent jurisdiction during the lifetime of the father made an order of filiation. The court must now decide the meaning of that section and its application to this case.
It is obvious that the law must protect the estates of deceased males from frivolous claims that they fathered issue during their lifetime, since such claim is made at a time that the decedent cannot properly answer the accusation and therefore cannot prevent his assets from being depleted by false claims, all to the detriment of his lawful heirs. The Fourth Report of the Temporary State Commission on the *939 Law of Estates (N. Y. Legis. Doc., 1965, No. 19) which considered the predecessor section to EPTL 4-1.2, stated that its recommendations were intended to grant to illegitimates, insofar as practicable, rights of inheritance on a par with those enjoyed by legitimate children while, at the same time, protecting innocent adults and those rightfully interested in their estates from fraudulent claims of heirship and harassing litigation. This court heartily agrees with the aims of the commission.
We must now attempt to decide how this law applies to the instant case.
The above section has been applied in various fashions by various courts. In Prudential Ins. Co. v Hernandez (63 Misc 2d 1058) the court had to apply and interpret EPTL 4-1.2 in a case where the decedent had acknowledged his two illegitimate children by written instruments in support of the birth registration of his children. The court held that there was no purpose in the literal application of the statute and concluded that the children were the sole heirs of decedent. In Matter of Belton (70 Misc 2d 814) the same section of law was involved when a girl claiming to be decedent’s daughter, born out of wedlock, made claim to his estate as sole distributee. The evidence showed that claimant’s birth certificate had decedent’s name as her father, that an affidavit of the decedent had been made at claimant’s birth stating that he was the father and report cards of the claimant were signed by decedent as her father. The court held that it was for the Legislature, and not the court, to pass laws and that since the strict requirements of the statute had not been met, claimant could not be considered a distributee of decedent.
It seems that, in the instant case, we are somewhere between the two extreme interpretations above cited. A filiation proceeding had, in fact, been commenced during the lifetime of decedent. The decedent appeared before Rensselaer County Family Court, a court of competent jurisdiction, and freely acknowledged paternity of the as yet unborn Jill Marie Beninati. At the time of his acknowledgment of paternity he was advised by the presiding Judge that he would have to pay for the support of the child until it was 21, until it went into the service or was employed. At the same time Joanne Marie Beninati, the child’s mother, was advised that she was to notify the Family Court as soon as she had given birth and an order of filiation would be made. Unfortunately, the mother *940 did not notify the court of the birth of her child until after decedent’s death.
At the hearing, conducted before this court, we were fortunate in having the Judge who presided at the filiation proceeding, Honorable Marcus L. Filley, testify concerning the proceedings which took place in Family Court. He stated that while he had not made a judicial determination that Ronald Niles was the father of the unborn child, he had made a factual determination that such was the case. He further stated that it was the signing of the order of filiation that made the factual determination a judicial one.
While there seems to be no legal prohibition that would have prevented Judge Filley from entering an order of filiation at the time of the proceeding on August 18, 1969, some five months before the infant was born, he testified that it was his practice not to enter an order of filiation until after the birth of a child even when the putative father freely acknowledged paternity. It seems to this court that there was, in fact, a determination made by a court of competent jurisdiction that Ronald Niles was the father of Miss Beninati’s unborn child. All that remained to be done was the signing of the formal order, a ministerial act. It further seems the spirit of the statute and certainly the intent of the commission which recommended the predecessor statute have been satisfied.
A true injustice would occur if the most literal interpretation of EPTL 4-1.2 were to be applied to the instant case. I therefore find that the infant, Jill Marie Beninati, is the lawful distributee of the decedent Ronald J. Niles.
While the above is dispositive of the issue of distribution, there is another view the court wishes to discuss.
The decedent left only a cause of action for wrongful death, the proceeds of which are to be distributed to his distributees in proportion to the pecuniary injuries suffered by them (EPTL 5-4.4, subd [a]). The order of a decedent’s distributees is set forth in EPTL 4-1.1 and lists issue of a decedent in a higher order than parents of a decedent.
However, EPTL 4-1.2 states that an illegitimate child is always the distributee of its mother but is the distributee of its father only if a court of competent jurisdiction had, during the lifetime of the father made an order of filiation. This distinction, while based in logic, seems to have reached constitutional proportions and a fine discussion of this issue is contained in Matter of Ortiz (60 Misc 2d 756). The Appellate *941 Division of the Second Department came to grips with this very issue in Holden v Alexander (39 AD2d 476) when the putative father of an illegitimate daughter sought to maintain an action for her wrongful death. There was no prior order of filiation in that matter. The court held that the issue on that appeal was not strictly the right to inherit, but rather the right to maintain an action for wrongful death, which necessarily brings into play related inheritance and wrongful death statutes.
Since the putative father had satisfactorily established his relationship to decedent, the court held that EPTL 4-1.2 (sub [a], par [2], sub [b]) was unconstitutional as applied to the facts of that case and held the father was entitled to be treated as his daughter’s distributee.
While the Appellate Division of the Second Department limited its ruling to the specific facts of that case, this court finds that the principles enunciated in Holden v Alexander (supra) apply to the case at bar and therefore holds that even if there had been no prior Family Court determination regarding Jill Marie Beninati’s parentage, she would still be entitled to receive the proceeds of the action for wrongful death of decedent Ronald J. Niles, upon satisfactorily proving that he was her father. To that end, this court finds that Ronald J. Niles’ admission of paternity is satisfactory proof of the infant’s claim.
The court will not now consider what effect if any, the nunc pro tunc order of December 20, 1973 would have in this matter.
In view of the above decision, the court will refrain from passing on the adequacy of the proposed offer of settlement since it was negotiated with decédent’s parents in mind and not decedent’s daughter. The court instructs the infant’s Law Guardian to examine the facts of decedent’s death and report to this court regarding the proposed settlement at which time its adequacy and the other issues remaining open will be decided.