Frank X. Altimari, J.
The plaintiff, the father of the decedent, has moved to amend the complaint and bill of particulars in this wrongful death action. He seeks to include an alleged illegitimate child of the decedent as a distributee.
The deceased died on March 9, 1973, the night before he was to be married. On September 18, 1973, the woman whom the decedent was to marry gave birth to a child. No order of filiation was made during the lifetime of the deceased putative father. It is this child the plaintiff seeks to include as a distributee of the proceeds of any recovery in this action.
In addition to the illegitimate child, the decedent was survived by his mother and the plaintiff father, who was issued letters of administration.
The New York State Legislature declared that an illegitimate child is the distributee of his father and the father of an illegitimate child is that child’s distributee. The critical issue herein is the meaning and interpretation of that legislative bill. (L 1975, ch 357.)
Chapter 357 of the Laws of 1975 amended EPTL 5-4.4, added a new section 5-4.5 and renumbered EPTL 5-4.5 to be EPTL 5-4.6. The effective date of the act was July 1, 1975.
Section 1 of chapter 357 which amended 5-4.4 states in pertinent part: "The damages, as prescribed by 5-4.3, whether recovered in an action or by settlement without an action, are exclusively for the benefit of the decedent’s distributees and, *1058 when collected, shall be distributed to the persons entitled thereto under 4-1.1 and 5-4.5”.
Section 3 of chapter 357 reads, "This act shall not affect causes of action accruing prior to its effective date.”
The 1975 Legislative Document No. 65 (J) and the Recommendation of the Law Revision Commission to the 1975 Legislature (see 1975 McKinney’s NY Sess Laws, pp 1564 and 1565 respectively) clearly reflected an intention that the statute reflect the holdings of the most recent and relevant case law.
However, the defendant claims that section 3 of chapter 357 mandates that the amendment to the statute be given prospective application.
The Law Revision Commission’s recommendation and Legislative Document No. 65 (J) did not contain an express or implied suggestion that the amendment be applied prospectively only.
The case law which led to the enactment of chapter 357 of the Laws of 1975 declared that an order of filiation was not required for an illegitimate child to share in the proceeds of the recovery for the wrongful death of a putative father or for a putative father to share in the proceeds of the recovery for the wrongful death of an illegitimate child. (Matter of Ortiz, 60 Misc 2d 756; Matter of Perez, 69 Misc 2d 538; Matter of Johnson, 75 Misc 2d 502; Holden v Alexander, 39 AD2d 476; Levy v Louisiana, 391 US 68; Matter of Ross, 67 Misc 2d 320.)
Judge Sobel, Surrogate of Kings County, summarized the prior existing inequity by stating (p 323): "The point, of course, is that the Levy decision has commanded a 'judicial’ amendment of the wrongful death distribution statute. It commanded that an illegitimate child be treated as a legitimate child. The statute (EPTL 5-4.4) must be read — 'The damages * * * are exclusively for the benefit of the decedent’s distributees which shall include illegitimate children.’ ”
The Appellate Division, Second Judicial Department, adopted a similar position in Holden v Alexander (supra). After a learned review of the decisions of the Supreme Court of the United States and several trial court decisions, the Appellate Division concluded that the requirement that an order of filiation be entered before an illegitimate child or its father be treated as the distributee of the other constituted invidious discrimination between legitimates and illegitimates.
Accordingly this court holds that section 3 of chapter 357 of *1059 the Laws of 1975 has no bearing on the facts and circumstances present in this case. Consequently, the amendment should be given retroactive application.
The cause of action herein for wrongful death accrued on March 9, 1973. The infant herein was born on September 18, 1973. As a result of clear appellate authority in New York (Holden v Alexander [supra]) and elsewhere (Schmoll v Creecy, 54 NJ 194; Levy v Louisiana [supra]), the illegitimate infant herein was entitled as of the date of his birth to share in the proceeds of a recovery in this wrongful death action which accrued on March 9, 1973, subject only to the evidence to be proffered at the trial. (Cf. Endresz v Friedberg, 24 NY2d 478; Byrn v New York City Health & Hosps. Corp., 31 NY2d 194.)
Even if it were held that an order of filiation was required in this case, when could an order of filiation have been made? EPTL 4-1.2 requires that the order of filiation be made during the lifetime of the father. Here, the putative father died during the mother’s first trimester of pregnancy. True, the mother could have commenced a paternity proceeding during the less than three-month period of pregnancy and during the lifetime of the putative father.* But, because of the father’s death the requirement of an order of filiation during such limited time period as is present here denies to the infant forever fundamental rights "based upon an act or omission of a mother who may be totally lacking in sufficient sophistication to be competent to protect the legal rights of the infants.” (Matter of Johnson, 75 Misc 2d 502, 504.)
Under such circumstances, who then was in a position to protect the rights of the infant during his first three months in útero? The law does not provide for the appointment of a guardian for the unborn to commence a filiation proceeding during the lifetime of the putative father. (But see, SCPA 315; Byrn v New York City Health & Hosps. Corp., supra.) This is because the law has neglected to accord constitutional protection to a less than three-month-old embryo or fetus. (Roe v Wade, 410 US 113.) For it has been held for reasons of policy and expedience that a less than three-month-old fetus has no legal existence or personality except in very narrow legal cubbyholes, and then such limited recognition is contingent *1060 upon being born alive. (Endresz v Friedberg, supra; Matter of Peabody [Chase Manhattan Bank-Holzmann], 5 NY2d 541; Matter of Logan, 3 NY2d 800; Woods v Lancet, 303 NY 349.) Legal and legislative decisions conceived by expedience and pregnant with policy judgments often breed unintended results which may maim other areas of the law. The illegitimate child’s rights here might have been the victim of such breeding.
The holding herein is not violative of the conclusion reached by the Court of Appeals in Matter of Lalli (38 NY2d 77). There, the court recognized that there was a material distinction between benefits and rights to which an illegitimate child is entitled as a result of the fact that he or she is the child of his or her parent, and expectations only to which such child may envision as a result of the parent-child relationship. Included in the former category is the right to proceeds of a wrongful death action. (Levy v Louisiana, supra.) Included in the latter category is the issue of whether such child shall inherit from his or her parent. Accordingly, the Court of Appeals upheld as constitutional the requirement of an order of filiation where "only an inchoate expectancy” was involved, that is, inheritance rights. (Matter of Lalli, supra, p 81.)
Consequently, the complaint and bill of particulars in the form annexed to the moving papers are deemed amended upon service of a-copy of this order upon the defendant.
Finally, it should be noted that if the infant is found to be the illegitimate child of the deceased, said child would be entitled to the whole recovery in the instant action. (EPTL 4-1.1.) As a result, it is possible that at trial there may be, on the one hand, a conflict in the position of the child and, on the other hand, the position of the parents of the decedent. Therefore, it may well be that a guardian of the child would make such application as he or she deems advisable under Matter of Ross (supra).

 The mother and father of the child planned to be married on March 10, 1973. The marriage would have made the child legitimate. (Domestic Relations Law, § 24.)