Fuld, J.
Whether or not a child en ventre sa mere is a “ person beneficially interested ” in a trust, within the meaning of section 23 of the Personal Property Law, is the sole question presented. If it is such a person, then, there may be no revocation of the trust even though all the living beneficiaries interested have given their consents.
On May 11, 1951, five days after reaching her twenty-first birthday, Judith Dunnington Peabody, recently married, created the irrevocable trust here involved. The corpus consisted of the grantor’s remainder interest in two trusts created by her great aunt along with over $200,000 in securities which she owned outright. The trustees, consisting of the grantor, the grantor’s mother and the Chase National Bank (now the Chase Manhattan Bank), were directed to pay the income to the grantor for life and, upon her death, to convey the principal to such beneficiaries as she might appoint by will. In default of testamentary appointment, the trust indenture provided, the corpus was to go to her surviving issue and, if there were none, to her mother; if, however, she were dead, then, it was payable to her father or if he, too, were dead, then, to certain designated charitable institutions.
In 1955, the grantor Judith Peabody, then childless, desiring to amend the deed of trust, took steps, pursuant to section 23 of the Personal Property Law, to obtain “ the written consent of all the persons beneficially interested in [the] trust None of the beneficiaries objected to what Mrs. Peabody proposed, and, by the end of September, 1955, she had obtained consents from all of them, except the Attorney-General whose consent, required as the representative of the indefinite and uncertain charity beneficiaries (Personal Property Law, § 12, subd. 3), was not obtained until March of 1956.
By that time, however, Mrs. Peabody had become pregnant and in May of 1956, one month before the child (Elizabeth) was born, the trustee Chase Bank advised that it would not recognize the proposed amendment because the child, conceived but not yet born, might be deemed a person *544 beneficially interested in the trust. Accordingly, the bank filed a petition seeking instruction as to whether the unborn child’s consent was necessary to effectuate the amendment of the trust. The court at Special Term held that such consent was not required, the Appellate Division unanimously affirmed and we granted permission to appeal.
To construe the statute as requiring the consent of a foetus, of a child still unborn, is to impute to the Legislature an intent to require the impossible. That we will not do, and, indeed, this court has already made it clear that section 23 demands the consent only of those persons who are alive, who are actually born and living, at the time of the proposed revocation. (See Smith v. Title Guar, & Trust Co., 287 N. Y. 500, 502-504; County Trust Co. v. Young, 287 N. Y. 801; see, also, Glanchopf v. Guaranty Trust Co. of N. Y., 274 App. Div. 39, 41; Levy v. Empire Trust Co., 269 App. Div. 188, 190-191; Matter of Ranger [Wormser], 15 Misc 2d 754; 4 Powell, Real Property [1954], p. 416; Mariash Revocation of Intervivos Trusts in New York, 16 Brooklyn L. Rev. 41, 61; Revocation of Intervivos Trusts, 1951 Report of N. Y. Law Rev. Comm., pp. 83-85, 111.) In the Smith case, the court stated that “ consent of the unborn children, who in some contingency might become entitled to an estate or interest in the trust fund,” is not required (287 N. Y., at p. 504):
“ The words 1 persons beneficially interested ’ must be strained beyond their usual and natural meaning if construed to include those not in being who might in some contingency be entitled to an estate. If the Legislature intended to permit a trust deed to be revoked only where every person now living who has a beneficial interest, vested or contingent, consents and no person born thereafter could in any possibility become entitled to an estate, then the Legislature has used words which conceal rather than make manifest that purpose.”
Although the “ children ” in Smith were unconceived as well as unborn, nothing may be made to turn upon that circumstance, for the opinion is instinct with the thought that the “ unborn children ’ ’ referred to meant children who were not born, who were not living and had not seen the light of day.
*545 Matter of Ranger (Wormser) (15 Misc 2d 754, supra) actually passed upon the question Avith which aa'o are here concerned in a brief but Avell-considered opinion. The grantor partially revoked the trust, Avhich he had created, after having obtained the consent of all persons then alive Avho had an interest in it. In an accounting proceeding, brought years later, it was established that a grandchild of the grantor had been conceived at the time he executed the revocation, and it was argued, just as it is here, that the revocation was ineffectual since the consent of the begotten but unborn child had not been obtained. The court rejected the contention, holding that a child en ventre sa mere is not a person beneficially interested in the trust. ‘ ‘ Any other view”, it was said, “ would create and be susceptible of innumerable practical difficulties.” For instance, it might be noted, trustees would not be privileged to act upon a proposed amendment until and unless they first determined that neither the settlor of the trust (if she be a woman) nor any other woman, whose offspring might have an interest in the trust, was pregnant. And the discovery, years later, of a child born after the revocation, but allegedly conceived prior thereto, would lead to litigation in which the decisive factor would be the time of conception, a matter rarely if ever capable of precise ascertainment.
As a matter of fact, the conclusion that there is no need to have the unborn child’s consent finds strong support in the legislative policy favoring the easier revocation of inter vivos trusts (see, e.g., Personal Property Law, § 23, as amd. by L. 1951, ch. 180; Real Property Law, § 118; 1951 Report of N. Y. Law Rev. Comm., pp. 83-85, 111). The Law Revision Commission, after remarking a general public policy ‘1 in favor of [the] revocability of trusts ” (1951 Report of N. Y. Law Rev. Comm., p. 85), stated that it has been “ recognized judicially” that such policy “ would be frustrated if revocation were made to depend upon consent of persons yet unborn".[1]
*546 The appellant contends, however, that, since a child en ventre sa mere is deemed ‘ ‘ in being ” or “ alive ’ ’ for purposes of taking property, it should likewise be so regarded under section 23. The argument overlooks the considerations, based on history, which led to the recognition of that concept. Because of the necessity in medieval England always to have available a living' person who could be charged with the performance of feudal duties, the common law developed the rule that a remainder estate was destroyed if the heir or devisee was not alive when the prior estate came to an end. Conception before such termination, followed by subsequent birth, was not enough; the lord of the manor needed a living person from whom, or from whose guardian, he could require allegiance and service. (See Moynihan, Preliminary Survey of Law of Real Property [1940], p. 43.) In consequence, therefore, a posthumous child could not take from or through his deceased father.
With the wane of the feudal system, however, the performance of feudal duties became less important and the courts sought a device by which they could mitigate the rigors of the rule. They found such a device in the fiction, already developed in the civil law, that, for the purpose of taking an estate or gift, a child en ventre sa mere would be considered born and living at the termination of the prior estate or the falling in of the inheritance, provided that the child was later born and able to take possession of the gift or inheritance. In adopting this fiction, the courts were merely providing a rule of construction by which property could, in spite of old technicalities, be allowed to pass to persons whom a decedent or testator most strongly desired to benefit, that is, his own children or issue or those of a chosen class, whether born in his lifetime or .posthumously. (See, e.g., Reve v. Long, 3 Lev. 408 [1695]; Trower v. Butts, 1 Sim. & S. 181 [1823]; Mason v. Jones, 2 Barb. 229, 251-252, affd. 3 N. Y. 375; Steadfast v. Nicoll, 3 Johns. Cas. 18, 21-29; Marsellis v. Thalhimer, 2 Paige Ch. 35, 40-41; 7 Holds-worth, History of English Law [1926], pp. 104-107,115; 5 Gray, Cases on Property [2d ed., 1908], pp. 47-54, 718-720.)
The Legislature of this State actually made it unnecessary for our courts to indulge any such fiction by providing, in the few situations where it desired to do so, for the protection of children conceived but not born when the prior interest in *547 the property ended (Decedent Estate Law, § 83, subd. 12; Real Property Law, § 56; see, also, Personal Property Law, § 11; Real Property Law, § 42). Thus, for instance, in the Decedent Estate Law, it is declared that descendants and distributees of the deceased, “ begotten before his death, but born thereafter,” shall take in the same manner “ as if they had been born in the lifetime of the deceased, and had survived him ” (§ 83, subd. 12) and, in the Real Property Law, it is provided that, where a future estate is limited to heirs, issue or children, ‘ ‘ posthumous children shall be entitled to take in the same manner as if living at the death of their parents ” (§ 56). Here is clear demonstration that the Legislature knew full well how to protect the interests of the unborn child if it so desired.
Nor do the cases which permit a child to recover for injuries negligently or intentionally inflicted upon it before birth (see Woods v. Lancet, 303 N. Y. 349), assist the appellant. Reflecting a rule of equity requiring a wrongdoer to compensate a child for the damages which he caused, those decisions do not justify the conclusion that a foetus is a “ person ” before its birth. On the contrary, this court held just the opposite when it refused to allow the 1 ‘ parent ” of a stillborn child to sue for its wrongful death. (See Matter of Logan, 3 N Y 2d 800.) In short, just as in the cases involving succession to property, a child en ventre sa mere is not regarded as a person until it sees the light of day.
Birth, rather than the date of conception, is the controlling factor in ascertaining a person beneficially interested in the trust which the grantor is seeking to revoke. The cases, the underlying policy considerations and the legislative design, point the conclusion that an unborn child is not a person beneficially interested, within the meaning of section 23, and, accordingly, its consent is not required.
The order of the Appellate Division should be affirmed, without costs.
Chief Judge Conway and Judges Desmond, Dye, Feoessel, Van Vooehis and Bueke concur.
Order affirmed.

. These remarks are contained in a study recommending an amendment to section 23, which was ultimately passed, to exclude from the category of “ persons beneficially interested ” persons described by the grantor as “ heirs or next of kin or distributees” (L. 1951, eh. 180). Although the modification has no direct bearing on the problem before us, it does indicate a legislative design to facilitate the revocation of trusts.