GUST CHRISAFOGEORGIS, Admr., Appellant, v. RICH-
ARD BRANDENBERG *et al.*, Appellees.

*Opinion filed October 1, 1973.—Rehearing denied Nov. 28, 1973.*

RYAN, J., UNDERWOOD, C.J., and KLUCZYNSKI, J., dissent-
ing.

KARLIN, KARLIN & FLEISHER, and MILLER &
RIBSTEIN, both of Chicago (BARRY M. WOLDMAN, of
counsel), for appellant.

HINSHAW, CULBERTSON, MOELMANN, HOBAN
& FULLER, of Chicago (D. KENDALL GRIFFITH and
DENNIS J. HORAN, of counsel), for appellees.

MR. JUSTICE WARD delivered the opinion of the
court:

The question presented is whether there can be
recovery under the Illinois Wrongful Death Act (Ill. Rev.
Stat. 1971, ch. 70, pars. 1 and 2) for the wrongful death of
a viable child or fetus born dead as a result of injuries
negligently inflicted *en ventre sa mere.*

On September 1, 1966, Mrs. Donna Chrisafogeorgis,
while in her 36th week of pregnancy, was struck by an

automobile driven by Richard Brandenberg as she walked across a Chicago street. Emergency surgery was performed on Mrs. Chrisafogeorgis several hours later and, according to the complaint which we consider here, it was determined that her unborn infant had died from injuries sustained when Mrs. Chrisafogeorgis was struck.

On March 27, 1968, Mrs. Chrisafogeorgis and her husband, Gust J. Chrisafogeorgis, filed a complaint in the circuit court of Cook County against the defendants, Richard Brandenberg, the driver of the automobile, and Hubert Brandenberg, its owner. Mrs. Chrisafogeorgis sought damages for her own injuries, and her husband, as the administrator of the estate of Baby Boy Chrisafogeorgis, sought recovery for the wrongful death of the stillborn child. The action by Mrs. Chrisafogeorgis is not involved in this appeal.

The defendants moved for summary judgment against the plaintiff Gust Chrisafogeorgis on the ground that under the Illinois Wrongful Death Act (Ill. Rev. Stat. 1971, ch. 70, pars. 1 and 2) there can be no action unless the fetus has been born alive. The circuit court granted the defendant's motion, and dismissed the wrongful death action. This was affirmed by the appellate court (3 Ill. App. 3d 422), and we granted leave to appeal.

There was no right to recover for wrongful death at common law. Whether this plaintiff had a cause of action depends on whether the Wrongful Death Act extends to the death of a viable fetus born dead because of injuries sustained prior to birth through a negligent act.

As relevant here, the Illinois Wrongful Death Act provides:

"Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which

would have been liable if death had not ensued, shall be liable to an action for damages ***." Ill. Rev. Stat. 1971, ch. 70, par. 1.

This court has held that there is a right of action for injuries wrongfully sustained by a viable child *en ventre sa mere* when the child survives the injuries and is born alive. *Amann v. Faidy, 415 Ill. 422, 430-431.*

Though this court has not considered the question whether there can be recovery for the wrongful death of a viable child who is born dead because of a wrongfully inflicted injury *en ventre sa mere*, courts in other jurisdictions have considered the question. A greater number of them have allowed an action for damages. (See generally, Annot. (1967), Action for Death of Unborn Child, 15 A.L.R.3d 992.) Holdings denying an action for the wrongful death of an infant injured while *en ventre sa mere* and stillborn, include: California (*Bayer v. Suttle (1972), 23 Cal. App. 3d 361, 100 Cal. Rptr. 212*); Iowa (*McKillip v. Zimmerman (Iowa 1971), 191 N.W.2d 706*); Massachussetts (*Keyes v. Construction Service, Inc. (1960), 340 Mass. 633, 165 N.E.2d 912*); New Jersey (*Graf v. Taggert (1964), 43 N.J. 303, 204 A.2d 140*); New York (*Endresz v. Friedberg (1969), 24 N.Y.2d 478, 248 N.E.2d 901*); North Carolina (*Gay v. Thompson (1966), 266 N.C. 394, 146 S.E.2d 425*); Oklahoma (*Howell v. Rushing (Okla. 1953), 261 P.2d 217*); Pennsylvania (*Carroll v. Skloff (1964), 415 Pa. 47, 202 A.2d 9*); Tennessee (*Hogan v. McDaniel (1958), 204 Tenn. 235, 319 S.W.2d 221; Durrett v. Owens (1963), 212 Tenn. 614, 371 S.W.2d 433*). Among holdings permitting an action are: Connecticut (*Gorke v. Le Clerc (Super. Ct. 1962), 23 Conn. Supp. 256, 181 A.2d 448; Hatala v. Markiewicz (Super. Ct. 1966), 26 Conn. Supp. 358, 224 A.2d 406*); Delaware (*Worgan v. Greggo & Ferrara, Inc. (Super. Ct. 1956), 50 Del. 258, 128 A.2d 557*); Georgia (*Porter v. Lassiter (1955), 91 Ga. App. 712, 87 S.E.2d 100*); Kansas (*Hale v. Manion (1962), 189 Kan. 143, 368 P.2d 1*); Kentucky

(*Rice v. Rizk (Ky. 1970), 453 S.W.2d 732*); Louisiana (*Valence v. Louisiana Power & Light Co. (La. App. 1951), 50 So. 2d 847*); Maryland (*State ex rel. Odham v. Sherman (1964), 234 Md. 179, 198 A.2d 71*); Michigan (*O'Neill v. Morse (1971), 385 Mich. 130, 188 N.W.2d 785*); Minnesota (*Verkennes v. Corniea (1949), 229 Minn. 365, 38 N.W.2d 838*); Mississippi (*Rainey v. Horn (1954), 221 Miss. 269, 72 So. 2d 434*); Nevada (*White v. Yup (1969), 85 Nev. 527, 458 P.2d 617*); New Hampshire (*Poliquin v. MacDonald (1957), 101 N.H. 104, 135 A.2d 249*); Ohio (*Stidam v. Ashmore (1959), 109 Ohio App. 431, 11 Ohio Op. 2d 383, 167 N.E.2d 106*); South Carolina (*Fowler v. Woodward (1964), 244 S.C. 608, 138 S.E.2d 42*); West Virginia (*Baldwin v. Butcher (W. Va. 1971), 184 S.E.2d 428*); Wisconsin (*Kwaterski v. State Farm Mutual Automobile Ins. Co. (1967), 34 Wis. 2d 14, 148 N.W.2d 107*).

Arguments most frequently advanced for a denial of the right of action are grounded (1) on the difficulties in establishing the existence of a causal relation between a prenatal injury and death, *e.g., Graf v. Taggert (1964), 43 N.J. 303, 204 A.2d 140,* and (2) on the problem in ascertaining the damages to be allowed (*Carroll v. Skloff (1964), 415 Pa. 47, 202 A.2d 9*).

This court in *Amann* considered and rejected an argument which was based on the difficulties of establishing causation in the case of a viable fetus injured *en ventre sa mere* who dies as a consequence after birth. The language used in *Amann* is appropriate for application here. It was said: "The argument based upon the difficulty of proof of a causal relation between the injury *en ventre sa mere* and the damage which subsequently becomes apparent has likewise been rejected. 'The difficulty of obtaining proof of the wrong should prompt greater leniency in affording the remedy, rather than a denial of plain justice. We are not impressed with the reasoning that a clear remedy for an injustice should be denied because a wrong is not readily susceptible of proof.' (*Scott v.*

*McPheeters,* 33 Cal. App. [2d] 629, 92 Pac. 2d 678, (1939).) Concerning 'the argument of convenience, based upon the difficulty of proof,' the Maryland court made these observations in the *Damasiewicz case* [*Damasiewicz v. Gorsuch (1950), 197 Md. 417, 437, 79 A.2d 550, 559*] : 'It is probable that this would have been almost insurmountable in the days of Coke, Hardwicke and Blackstone, and perhaps of Holmes, and may have influenced their conceptions of the law. Physicians of today would have less trouble with the problem, but apart from this, the right to bring an action is clearly distinguishable from the ability to prove the facts. The first cannot be denied because the second may not exist." 415 Ill. 422, 430-431.

Here, of course, we are considering the question of a right to bring an action, not the evidence in support of the complaint. We judge that the argument grounded on claimed difficulties in showing causation does not require the denial of a right of action. Parenthetically, we would observe that Mrs. Chrisafogeorgis was in her eighth month of pregnancy; there is no question as to the viability of Baby Boy Chrisafogeorgis.

We do not consider that difficulties in determining damages should operate as a legal bar to the right of action. It is unquestioned that there can be a recovery for the wrongful death of a child who lives but a moment after birth. Difficulties in determining damages of the parents of this child cannot be deemed greater or different in character from difficulties attending the determination of damages in the case of an injured child who did not survive delivery.

Among the principal reasons advanced for allowing a right of action for the wrongful death of a viable but stillborn child is that the fetus has an existence separate and independent of its mother. In *Amann* this court in considering the independent life of the fetus quoted from *Woods v. Lancet (1951), 303 N.Y. 349, 357, 102 N.E.2d 691, 695,* where it was said: "To hold, as a matter of law,

that no viable foetus has any separate existence which the law will recognize is for the law to deny a simple and easily demonstrable fact. This child, when injured, was in fact, alive and capable of being delivered and of remaining alive, separate from its mother."

Another ground often expressed for permitting a right of action is that a holding would be logically indefensible which would allow a right of action where an injured child survives delivery for even the briefest time and would deny an action where the viable child does not survive delivery. *Hatala v. Markiewicz (Super. Ct. 1966), 26 Conn. Supp. 358, 224 A.2d 406; Gorke v. Le Clerc (Super. Ct. 1962), 23 Conn. Supp. 256, 181 A.2d 448; Hale v. Manion (1962), 189 Kan. 143, 368 P.2d 1; State ex rel. Odham v. Sherman (1964), 234 Md. 179, 198 A.2d 71; O'Neill v. Morse (1971), 385 Mich. 130, 188 N.W.2d 785; Rainey v. Horn (1954), 221 Miss. 269, 72 So. 2d 434; Poliquin v. MacDonald (1957), 101 N.H. 104, 135 A.2d 249; Stidam v. Ashmore (1959), 109 Ohio App. 431, 11 Ohio Op. 2d 383, 167 N.E.2d 106; Fowler v. Woodward (1964), 244 S.C. 608, 138 S.E.2d 42; Baldwin v. Butcher (W. Va. 1971), 184 S.E.2d 428.*

A statement in *Stidam v. Ashmore (1959), 109 Ohio App. 431, 434, 11 Ohio Op. 2d 383, 385, 167 N.E.2d 106, 108,* gives an example of incongruous results which would be reached under such a holding. The court observed:

"The wrongful death statute, Section 2125.01 Revised Code, grants a derivative right. The test of the existence of that right is that the injury 'would have entitled the party injured to maintain an action and recover damages if death had not ensued.' If death had not ensued, the child in our present case would have been entitled to maintain an action. We are unable to reconcile the two propositions, that if the death occurred after birth there is a cause of action, but that if it occurred before birth there is none. \*\*\*

Such a distinction could lead to bizarre results. Suppose, for example, viable unborn twins suffered simultaneously the same prenatal injury of which one died before and the other after birth. Shall there be a cause of action for the death of the one and not for that of the other? Surely logic requires recognition of causes of action for the deaths of both, or for neither."

Weighing the holdings for and against giving a right of action and their supporting grounds we are persuaded that the preferred rule is that a right of action should be recognized.

This recognition is not only consistent with *Amann* but is a reasonable and natural development of the holding. The complaint had charged injury to "a living human entity *en ventre sa mere.*" The core question presented was the legal significance of viability. This court held that injuries sustained by a viable fetus which caused death after delivery was actionable. The factual difference between the case there and the one here is the time of death, not the character of the injury. The cases have the common ground and question of the rights arising from the death of a "child [who], when injured, was in fact, alive and capable of being delivered and of remaining alive, separate from its mother." (*Woods v. Lancet (1951), 303 N.Y. 349, 357, 102 N.E.2d 691, 695.*) The central holding in *Amann* was that a right of action arose from fatal injuries to such a child. The further question involved in this case was not there presented.

It can be argued, as does the defendant, that, of necessity, border lines often must be drawn and that the process of live delivery should be the line in this case. However, we consider more realistically and reasonably that viability is the appropriate line of demarcation. It is the time at which a child is capable of being delivered and remaining alive separate from and independent of the mother. This can be said to be the critical stage of a

"person" within the meaning of the Wrongful Death Act's language "Whenever the death of a person ***."

Too, in drawing dividing lines or borders for rights or disabilities, lines which unnecessarily produce incongruous and indefensible results should be avoided. The Supreme Court of Wisconsin in *Kwaterski v. State Farm Mutual Automobile Ins. Co. (1967), 34 Wis. 2d 14, 20, 148 N.W.2d 107, 110,* made the observation: "If no right of action is allowed there is a wrong inflicted for which there is no remedy. Denying a right of action for negligent acts which produce a stillbirth leads to some very incongruous results. For example, a doctor or a midwife whose negligent acts in delivering a baby produced the baby's death would be legally immune from a lawsuit. However, if they badly injured the child they would be exposed to liability. Such a legal rule would produce the absurd result that an unborn child who was badly injured by the tortious acts of another, but who was born alive could recover while an unborn child, who was more severely injured and died as a result of the tortious acts of another, could recover nothing."

For the reasons given, the judgment of the appellate court is reversed and the cause is remanded to the circuit court of Cook County with directions to deny the motion for summary judgment.

*Reversed and remanded, with directions.*

MR. JUSTICE RYAN, dissenting:

I do not agree that a cause of action exists under our Wrongful Death Act for death, prior to birth, caused by an injury to an unborn viable fetus. Before discussing the basic reason for my disagreement I wish to point out that the same "incongruous" or "bizarre" results which the opinion envisages as being possible if the line of demarcation is set at birth are possible if the line of demarcation is set at the inception of viability. One difference is that birth is a definite, precise and observable

occurrence. Viability on the other hand is uncertain, indefinite and depends upon several factors other than the length of pregnancy. In fact, one author has described viability as "a most unsatisfactory criterion, since it is a relative matter, depending on the health of mother and child and many other matters in addition to the stage of development." (Prosser, Handbook of the Law of Torts, 4th ed. 1971, 337.) As long as we are indulging in judicial legislation, why set the line of demarcation at viability? Why should not a cause of action exist for the death of a fetus in its previable state?

The opinion quotes from *Kwaterski v. State Farm Mutual Automobile Ins. Co., 30 Wis. 2d 14, 20, 148 N.W.2d 107, 110,* which conjectures a supposed incongruous result of permitting recovery for an injury to an unborn child but not permitting recovery for the wrongful death of an unborn child. The same incongruous result is possible in this State when the line of demarcation for wrongful death purposes is placed at viability because two appellate court decisions in Illinois have held that a cause of action for prenatal injuries is not dependent upon viability. *Daley v. Meier, 33 Ill. App. 2d 218; Sana v. Brown, 35 Ill. App. 2d 425.*

The opinion refers to the reliance which this court in *Amann v. Faidy, 415 Ill. 422,* placed on the language of the Court of Appeals of New York in *Woods v. Lancet, 303 N.Y. 349, 102 N.E.2d 691,* to the effect that a viable fetus has a separate existence recognizable in law. However, neither *Amann* nor *Woods* involved the death of a child prior to birth. In fact, the Court of Appeals of New York has held that neither *Woods* nor the decisions of other cases which permit a child to recover for injuries inflicted before birth justify the conclusion that a fetus is a "person" before it is born within the meaning of the statute. (*In re Peabody (1959), 5 N.Y.2d 541, 158 N.E.2d 841.*) In *Endresz v. Friedberg (1969), 24 N.Y.2d 478, 248*

*N.E.2d 901,* the Court of Appeals of New York, in holding that the legislature, when it enacted the New York statute creating a cause of action for wrongful death in 1847 did not intend to create a cause of action for the death of an unborn fetus, stated:

> "Indeed, it was not until 1951, more than 100 years later, that this court—overruling a long-standing decision (*Drobner v. Peters,* 232 N.Y. 220, 133 N.E. 567, 20 A.L.R. 1503 [1921] —decided that 'a child viable but *in utero,* if injured by tort, should, when born, be allowed to sue.' (*Woods v. Lancet, 303 N.Y. 349, 353.*) If, before *Woods,* a child so injured had no right of action, still less was such an action intended to lie on behalf of one who, never seeing the light of day, was deprived of life while still in its mother's womb."

The court in *Endresz* distinguished between the updating of a common law action by judicial decision which was the effect of the decision in *Woods* and the reinterpretation of a statutory cause of action which had been created by the legislature.

Basic to my disagreement with the majority opinion is the fact that we are here considering not a common-law cause of action but one created solely by the legislature. It is my belief that the legislature when it created the cause of action in Illinois did not intend to create a cause of action for the death of an unborn fetus. The statute has never been so interpreted and for this court to now say that the legislature did create such a cause of action is just pure judicial legislation. I am not discussing the logic of the situation nor whether justice requires that such a cause of action be created. I am simply pointing out that, unlike a common-law negligence action, no right of recovery exists for the death of a person unless it is created by the legislature. If such a cause of action is created it should

come about through legislative action. An unborn fetus is plainly not a person within the meaning of our present Wrongful Death Act.

At common law there was no cause of action for the wrongful death of an individual, and there is no such cause of action today except as provided by the legislature. (*Li Petri v. Turner Construction Co., 36 Ill.2d 597.*) The statute alone is the source of the right to maintain an action, and being in derogation of the common law it must be strictly construed. (*Wilson v. Tromly, 404 Ill. 307.*) In *Wilson* this court stated that "under the provisions of this act the legislature, having conferred a right of action for death by wrongful act, may determine who shall sue, and the conditions under which the suit may be brought." 404 Ill. at 310.

Our present act is almost identical to the original statute enacted by the General Assembly of this State in 1853. Our original statute was a copy of the New York statute of 1847, which in turn was substantially a copy of the first two sections of a statute enacted in England in 1846, commonly known as Lord Campbell's Act (9th and 10th Victoria, ch. 93). (See S.H.A., ch. 70, sec. 1, Historical Note.) The legislature did not define the word "person" in the 1853 act, nor has it since that date defined the word as used in the statute.

The 1884 Massachusetts case of *Dietrich v. Inhabitants of Northhampton, 138 Mass. 14,* announced as the basis for its decision the common understanding at that time of the legal status of a fetus. That case reasoned that a fetus was not a separate and distinct legal entity from its mother. The history of actions for ·prenatal injuries indicates that there was no change in this general understanding until 1946. (See Prosser, Handbook of the Law of Torts (4th ed. 1971) 335.) It would appear therefore that in 1853, when our legislature enacted our wrongful death statute, the common and accepted meaning of the word "person" did not include a fetus,

whether it was viable or not. It is well established that the words of a statute must be taken in the sense in which they were understood at the time that the statute was enacted. (50 Am. Jur. Statutes, sec. 236.) To now, through judicial decision, say that a fetus which did not survive birth is a person within the meaning of the statute would be giving to that word a meaning which was not contemplated by the legislature when the statute was enacted and one which had not been given to it by judicial decision anywhere in this country for nearly 100 years thereafter. During this period of time the legislature had occasion to amend our Wrongful Death Act on several occasions (primarily in the area of limitations on recovery), but in spite of the decisions of this court and other jurisdictions that denied recovery for prenatal injuries the legislature did not amend the Act to specifically create a cause of action for death of an unborn fetus. If there is to be an extension or a modification of the statutory right to include the wrongful death of a fetus, the same should be accomplished through legislative action.

Aside from the determination of whether or not a cause of action should be created, there exists the further question of whether it should arise only when the injury causing the wrongful death was inflicted after the fetus has attained viability or whether it should be extended to also include a nonviable fetus. Further consideration should also be given to what the measure of damages in such an action should be. (See Prenatal Injuries and Wrongful Death (1965), 18 Vand. L. Rev. 847.) The language in section 2 of our present act, which provides for the recovery of damages and the distribution of the same, is not appropriate to encompass damages for the wrongful death of a fetus and apparently, judging from the language used, was not intended to do so.

My position that an unborn fetus is not a person finds support in the recent Supreme Court decisions concerning

abortion (January 22, 1973) (*Roe v. Wade, 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705; Doe v. Bolton, 410 U.S. 179, 35 L. Ed. 2d 201, 93 S. Ct. 739*). In *Roe v. Wade*, Mr. Justice Blackmun considered the question of whether a fetus is a "person" within the meaning of the fourteenth amendment of the Federal constitution. The opinion points out each instance in the Federal constitution where the word "person" is used and concludes:

> "But in nearly all these instances, the use of the word is such that it has application only post-natally. None indicates, with any assurance, that it has any possible prenatal application.
>
> All this, together with our observation, *supra*, that throughout the major portion of the 19th century prevailing legal abortion practices were far freer than they are today, persuades us that the word 'person,' as used in the Fourteenth Amendment, does not include the unborn." (Footnotes omitted.) 410 U.S. 113, 157-158, 35 L. Ed. 2d 147, 179-180, 93 S. Ct. 705, 729.

Our statute providing for recovery for death of a person by wrongful act was adopted only 13 years before the fourteenth amendment was proposed to the State legislatures by Congress. Nothing in the language in our statute indicates that the word "person" as used therein should include the unborn while in an enactment of Congress of the same period the word "person" through its common usage at that time has been interpreted to exclude the unborn.

*Roe v. Wade* further states:

> "In areas other than criminal abortion, the law has been reluctant to endorse any theory that life, as we recognize it, begins before live birth or to accord legal rights to the unborn except in narrowly defined situations and except when the rights are contingent upon live birth. \*\*\* In short, the unborn have never been recognized in

the law as persons in the whole sense." 410 U.S. 113, 161-162, 35 L. Ed. 2d 147, 182, 93 S. Ct. 705, 731.

The Supreme Court's holding concerning the State's role in controlling abortion further supports the conclusion that if a cause of action is to be created for the wrongful death of an unborn fetus it should be created by the legislature. In the two cases the Supreme Court divided the period of pregnancy into three stages for purposes of prescribing guidelines for State legislation with regard to abortion. During the first stage the State may not interfere with the abortion decision. For the second stage the State, in promoting the interest of the health of the mother may, *if it chooses,* regulate the abortion procedure in ways that are reasonably related to maternal health. In the stage subsequent to viability, the State may, *if it chooses,* regulate and even proscribe abortion except when it is necessary for the preservation of the life or health of the mother. 410 U.S. 113, 164-165, 35 L. Ed. 2d 147, 183, 93 S. Ct. 705, 731-732.

What are the rights of a father of a viable fetus who does not consent to an abortion? May a cause of action for the wrongful death of the fetus be maintained for his benefit? With the leeway conferred upon the States within which they may authorize or proscribe abortion by statute, it would appear that, to avoid apparent or actual inconsistencies in the law, any right of action created for the wrongful death of an unborn child should be correlated with the provisions of the statute pertaining to abortions. This should properly be done by the legislature.

UNDERWOOD, C.J., and KLUCZYNSKI, J., join in this dissent.