**Larry D. WADE and Vicky G. Wade, individually and as special administrators of the estate of Sheila Ilene Wade and as special administrators of the estate of Cecilia Ann Wade, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 89–00226 HMF.**

United States District Court, D. Hawaii.

Aug. 28, 1990.

Mark S. Davis, Michael K. Livingston, Davis & Levin, Honolulu, Hawaii, for plaintiffs.

Daniel A. Bent, U.S. Atty., Theodore G. Meeker, Asst. U.S. Atty., Honolulu, Hawaii, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

FONG, Chief Judge.

## INTRODUCTION

Defendant United States of America (the "government") brings this motion to dismiss or in the alternative for summary judgment on plaintiff's claim under the Hawaii wrongful death statute. Haw.Rev. Stat. § 663-3 (1988). Plaintiffs oppose this motion. Defendant's motion came on for hearing on August 6, 1990. The court, having reviewed the motion and the memoranda in support thereof and in opposition thereto, having heard the oral arguments of counsel, and being fully advised as to the premises herein, finds as follows:

Plaintiffs Larry and Vicky Wade bring this action under the Federal Tort Claims Act, 28 U.S.C. § 1346 (1982 & Supp.1986), in their individual capacities and in their capacity as special administrators of the estates of Sheila Ilene Wade and Cecelia Ann Wade, twins who were stillborn on May 9, 1986.[1] Plaintiffs allege that the stillbirth occurred solely as a result of the medical malpractice of physicians at Tripler Army Hospital (the "hospital"), an entity of the United States. Plaintiffs' complaint further alleges that physicians at the hospital were negligent in failing to place a cerclage on plaintiff Vicky Wade's allegedly incompetent cervix and in failing to

discuss with her the advantages and disadvantages of using this device. Finally, plaintiffs assert that the twins would not have been stillborn if the cerclage had been used.

Defendant's argument on this motion is relatively simple; the government contends that plaintiffs have no cause of action under the Hawaii wrongful death statute for the wrongful termination of a fetus which was never born. In the alternative, the government moves for summary judgment on plaintiffs' claims under the wrongful death statute. Recognizing that a number of states have allowed plaintiffs to bring wrongful death actions for the death (using that term loosely) of a viable fetus, the government asserts that there is no genuine factual dispute that the Wade twins were not yet viable at the time of the stillbirth and that, for that reason, no action under the wrongful death action may lie in this case.

Plaintiff urges the court that defendant's motion should be properly characterized as a motion for partial dismissal and in the alternative for partial summary judgment. Defendant's motion attacks only those claims asserted under the Hawaii wrongful death statute as applied through the Federal Tort Claims Act. Plaintiffs assert that claim but also assert another claim for their "injury, pain, suffering, mental and emotional distress" as a result of the hospital's negligence. Complaint, p. 5. Because that suit is independent of the termination of the fetuses and those injuries are not among the types recoverable under the wrongful death statute, plaintiffs assert a cause of action outside that statute. Thus defendant's motion is properly characterized as one for partial dismissal and for partial summary judgment.

---

1. Because jurisdiction must lie before the court can consider this motion, the court acknowledges that it has jurisdiction over this cause of action by virtue of the grant contained within the Federal Tort Claims Act. 28 U.S.C. § 1346(b) (1982). That Act provides in pertinent part that,

 ... the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

## DISCUSSION

### DEFENDANT'S MOTION TO DISMISS

The federal defendants have brought their motion to dismiss pursuant to Fed.R. Civ.P. 12(b)(6). Rule 12(b) of the Federal Rules of Civil Procedure provides as follows:

Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted....

In considering a 12(b)(6) motion to dismiss, the general rule is that a complaint should not be dismissed on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir.1980); *California ex rel. Younger v. Mead*, 618 F.2d 618, 620 (9th Cir.1980).

 In evaluating a complaint, any doubts should be construed in favor of the pleader. *Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 834–36 (9th Cir.1980). The complaint must be liberally construed, giving the plaintiff the benefit of all proper inferences. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

 The Federal Tort Claims Act incorporates the law of the jurisdiction in which the allegedly tortious act occurred as the law to be applied in claims under it. The Act reads, in pertinent part:

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private*

*person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.* 28 U.S.C. § 1346(b) (1982) (emphasis added).

The law of the State of Hawaii under which plaintiffs seek recovery is the state's Wrongful Death Statute, codified at Haw. Rev.Stat. § 663–3 (1988). That statute provides in pertinent part that,

When the death of a person is caused by the wrongful act, neglect, or default of any person, the deceased's legal representative, or any of the persons hereinafter enumerated, may maintain an action against the person causing the death or against the person responsible for the death. The action shall be maintained on behalf of the persons hereinafter enumerated, except that the legal representative may recover on behalf of the estate the reasonable expenses of the deceased's last illness and burial....

 Plaintiffs bring this suit in dual capacities. They sue in their individual capacities as parents of the twin fetuses. The Hawaii wrongful death statute delineates the types of people who may maintain a cause of action under it, and it includes parents of the deceased as one of those types. The statute allows a wrongful death action to be brought "... by the surviving spouse, children, *father, mother,* and by any person wholly or partly dependent upon the deceased person." Haw.Rev. Stat. § 663–3 (1988) (emphasis added). Thus plaintiffs may properly bring a wrongful death action in their individual capacities.

 Plaintiffs also bring this suit in their capacity as special administrators of the estates of the twin fetuses. While the deceased's estate is not one of the entities enumerated in the above quoted statutory passage, a prior passage of the wrongful death statute provides that "... the deceased's legal representative, or any of the persons hereinafter enumerated, may maintain an action ..." under the statute. However, the statute clearly and severely narrows the scope of damages recoverable by the deceased's legal representative

when it provides that, "[t]he action shall be maintained on behalf of the persons hereinafter enumerated, except that the legal representative may recover on behalf of the estate the reasonable expenses of the deceased's last illness and burial." Haw.Rev. Stat. § 663–3 (1988). Thus the plaintiffs, in their capacity as special administrators of the estates of the twins, can only sue under the Act for the costs associated with the fetuses last illness and burial. Plaintiffs' complaint, however, advances no such claim for those expenses, so plaintiffs cannot maintain this action on behalf of the estates.

The central issue presented by this motion is whether a plaintiff may bring a suit under the Hawaii wrongful death statute for the death of a fetus which never sustained life outside its mother's womb. As all causes of action predicated upon the death of someone other than the plaintiff are entirely creations of statute, this motion presents an issue of statutory construction. The Hawaii statute allows an action for the death of a "person," but this case does not call for the court to make any moral, philosophical, or theological determination of what constitutes a person or a life. Such an approach would turn this case into an exercise in semantics when there is no indication that the Hawaii legislature placed some special significance in the word "person."

■ Rather this case merely calls for this court to determine whether the Hawaii legislature would extend recovery to proper plaintiffs under this statute for the death of a fetus. Both parties agree and research reveals that the Hawaii legislature never considered this issue and that nothing in the legislative history associated with this statute touches upon it. Similarly, it is equally clear that no court of the state of Hawaii has addressed this issue or any issue approximating it.

This claim arises under the Federal Tort Claims Act, which contains its own grant of jurisdiction to the federal courts. 28 U.S.C. § 1346 (1982 & Supp.1986). Nevertheless, the case turns upon a determination of Hawaii law, so the court is faced with a situation analogous to one in which it sits in diversity. In absence of controlling state law, a "federal court sitting in diversity must use its own best judgment in predicting how the state's highest court would decide the case." *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980). In reaching its decision, the federal court may seek guidance from case law in other jurisdictions. In making its prediction, however, the federal court should be reluctant to create any new causes of action. *Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221, 223 (3d Cir.1984).

■ While no authority from the state of Hawaii exists on this point, courts of many other jurisdictions have addressed it. Courts of other states are not in agreement on the issue, but a clear majority allow a plaintiff to bring a wrongful death action based on the death of a viable fetus. A survey of American jurisdictions reveals that the courts of thirty-three states that have addressed this issue allow such a suit.[2] *See generally* Annotation, *Right to Maintain Action or to Recover Damages for Death of Unborn Child*, 84 A.L.R.3d 411, 422–25, §§ 3[a]–3[b] (1978 & Supp. 1989). By contrast, that same survey reveals that the courts of only ten jurisdictions addressing the issue will not allow one to maintain a cause of action for wrongful death based on the demise of a fetus. These jurisdictions include Alaska, California, Florida, Iowa, Nebraska, New Jersey, New York, Tennessee, Texas, and Virginia. In addition, the survey reveals a clear recent trend toward recognizing this cause of action under wrongful death statutes. *Id.*

Courts refusing to allow actions for the wrongful death of a viable fetus chiefly rely upon a dissection of the statutory

---

**2.** Those jurisdictions include Alabama, Arizona, Connecticut, Delaware, the District of Columbia, Georgia, Idaho, Illinois, Indiana, Kansas, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Vermont, Washington, West Virginia, and Wisconsin.

word "person." The Supreme Court of California dissected that term by comparing its use in other state statutes. *See Justus v. Atchison,* 19 Cal.3d 564, 565 P.2d 122, 139 Cal.Rptr. 97 (1977). For example, the California legislature extended its murder statute to redefine the term "human being" to include a fetus by establishing that murder is the unlawful or malicious killing of "a human being, or a fetus." Because the legislature failed to so specifically include a fetus within the term "person" in the state's wrongful death statute, the court concluded that "when the Legislature speaks generally of a 'person,' as in [the wrongful death statute], it impliedly but plainly excludes such fetuses." *Justus,* 19 Cal.3d at 579, 565 P.2d at 132, 139 Cal.Rptr. at 107.

The highest court of the state of New York, the New York Court of Appeals, on the other hand, placed less emphasis on statutory construction of the word "person" and instead engaged in a more policy-oriented discussion in denying a cause of action for the wrongful death of a fetus. Upon noting that the courts had only recently overruled long-standing authority by deciding that "a child viable but *in utero,* if injured by tort, should, when born, be allowed to sue," *Endresz v. Friedberg,* 24 N.Y.2d 478, 483, 248 N.E.2d 901, 903, 301 N.Y.S.2d 65, 68 (1969), *quoting Woods v. Lancet,* 303 N.Y. 349, 353, 102 N.E.2d 691, 693 (1951), the court then distinguished that situation from the instant one in which the viable fetuses were injured *in utero* but were not born alive. The court found that the reasons supporting suits by injured fetuses born alive did not support suits by injured fetuses never born. First it opined that "the fact that the injured child 'is born alive tends to effectively permit a just result, and reduces materially the inherent complex problems incident to causation and the pecuniary loss suffered. * * * On the other hand, if the fetus is stillborn, speculation as to causation and particularly loss suffered is unreasonably increased.'" *Endresz,* 248 N.E.2d at 904, 301 N.Y.S.2d at 69, *quoting Carroll v. Skloff,* 415 Pa. 47, 49, 202 A.2d 9, 11 (1964) *overruled Amadio v. Levin,* 509 Pa. 199,

501 A.2d 1085 (1985). The court also noted that live infants could sue for prenatal injuries because " '[t]he hardship of many of the decisions denying relief [in prenatal cases] lay in the fact that they required an infant to go through life * * * bearing the seal of another's fault. There is no such justification in the wrongful death situation.' " *Endresz,* 24 N.Y.2d at 484, 248 N.E.2d at 904, 301 N.Y.S.2d at 69, *quoting* Gordon, *The Unborn Plaintiff,* 63 Mich.L. Rev. 579, 594–95.

In ironic contrast, however, many of the courts that allow a cause of action for the wrongful death of a stillborn viable fetus have also drawn logical support for their conclusion from the fact that a fetus born alive may sue for prenatal injuries. They have reasoned that it is "arbitrary, illogical, and unjust to make the right to maintain an action for a child's death depend on whether the child is born alive." Annotation, *Right to Maintain Action or to Recover Damages for Death of Unborn Child,* 84 A.L.R.3d 411, 417 (1978 & Supp. 1989). As stated by the Court of Appeals for the Fourth Circuit in interpreting South Carolina's wrongful death statute,

> To balance the right of action upon whether the child, fatally injured by the negligence of another, is born dead or alive seems not only an artificial demarcation but unjust as well. To illustrate, if the trauma is severe enough to kill the child, then there could be no recovery; but if less serious, allowing the child to survive, there might be recovery. Again, if the fatality was immediate, the suit could not prevail, but if the death was protracted by a few hours, even minutes, beyond birth, the claim would succeed. Practically, it would mean that the graver the harm the better the chance of immunity. Moreover, it allows the act of the tortfeasor to foreclose his own liability—the life of the action would be in his hands. *Todd v. Sandidge Constr. Co.,* 341 F.2d 75, 76–77 (4th Cir.1964).

Numerous other courts have employed similar reasoning in allowing suit for wrongful death of a viable fetus. *See Eich v. Gulf Shores,* 293 Ala. 95, 300 So.2d 354 (1974)

(denying cause of action would only serve the tortfeasor by rewarding him for his severity in injuring the fetus and would immunize the greater harm); *Chrisafogeorgis v. Brandenberg*, 55 Ill.2d 368, 304 N.E.2d 88 (1973) (illogical to deny cause of action in light of the fact that a child born alive may sue for prenatal injuries because liability would attach upon injuring fetus but not upon killing it); *State use of Odham v. Sherman*, 234 Md. 179, 198 A.2d 71 (1964) (no reason to cut off cause of action because child born dead while allowing cause of action if child born alive); *Stidam v. Ashmore*, 109 Ohio App. 431, 11 Ohio Ops.2d 383, 167 N.E.2d 106 (1959) (if viable twin fetuses suffered same simultaneous prenatal injury but only one was born alive, it would be illogical to allow one to recover and not the other).

█ Early courts refusing to recognize a cause of action for the wrongful death of a viable fetus often pointed to the problems of proof associated with such a claim and determined that these problems suggested that no such claim should be allowed to lie. Modern courts have eroded this line of reasoning because advances in medical science have provided a better understanding of the viability of fetuses, of the means of their termination, and of the proper measure of damages to be awarded. *See, e.g., Chrisafogeorgis v. Brandenberg*, 55 Ill.2d 368, 304 N.E.2d 88 (1973). In addition, problems of proving certain injuries should not impact heavily upon the central issue of whether a cause of action lies in the first place. *Mitchell v. Couch*, 285 S.W.2d 901 (Ky.1955).

The majority position, allowing a cause of action for the wrongful death of a viable fetus who could have sustained life outside the womb, represents the more logical and thoughtful holding. Therefore the court, in its best estimation, predicts that the Supreme Court of Hawaii would reach this same conclusion. This conclusion comports with principles of fairness and justice in light of the fact that a live-born child may sue for injuries suffered as a fetus. To deny a wrongful death action in the event that the injury kills the fetus makes little sense. Such a denial would only immunize the more severe tort and would allow the tortfeasor to eliminate his own liability by increasing rather than by mitigating the impact of his wrongs. To avoid such an anomaly, the court construes the Hawaii wrongful death statute to allow parents of a stillborn viable fetus to sue for its wrongful death.

Each court which recognizes this cause of action for wrongful death has limited it to actions predicated on the death of a *viable* fetus with the lone exception of the court of Rhode Island, which allows such a suit to find its premise in the termination of a nonviable fetus. *Presley v. Newport Hospital*, 117 R.I. 177, 365 A.2d 748 (1976). In this court's best estimate, the Hawaii Supreme Court would also limit the cause of action to wrongful death of a viable fetus only. Defendant's motion to dismiss plaintiffs' wrongful death action is DENIED.

### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In the alternative, defendant moves for summary judgment, arguing that the undisputed facts show that neither of the twin fetuses involved in this case were viable at the time of their termination. Since an action for wrongful death of a fetus can only lie if the fetuses had achieved viability by the time of injury, summary judgment would be appropriate if there is no genuine dispute that the twin fetuses were not viable.

█ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine

issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. *But cf., id.,* 477 U.S. at 328, 106 S.Ct. at 2555–56 (White, J., concurring).

█ In its memorandum in support of this motion, defendant offered no evidence or affidavit to show that the fetuses were not viable at the time of injury. Defendant's statement was at best a bald assertion of fact. Thus, defendant initially failed its burden of showing an absence of a genuine dispute on the factual issue of viability. Plaintiff's memorandum in opposition to the motion pointed out this failing, thus prompting the defendant to submit a supporting affidavit with its reply memorandum.

The affidavit of Lieutenant Colonel Robert W. Smith, M.D., Acting Chief of the Department of Obstetrics and Gynecology at Tripler Army Medical Center, states that he has reviewed Vicky Wade's medical records. Upon his review, he avers that he "can and do[es] state to a medical certainty that, because of their relatively early stage of development (approximately 19 weeks), these fetuses were not capable of viable life outside the womb of the mother. At the time and, indeed, presently, the earliest that one could expect a fetus to have any chance of survival outside of the womb of the mother would be at 24 weeks and even at this stage, the chances of survival are very minimal. This is because prior to 24 weeks, the development of the internal organs of a child, and, in particular, the lungs, has not progressed to the point where they are capable of sustaining the child, even with the use of artificial life sustaining technology available to the medical community." Affidavit of Robert W. Smith, M.D. ¶ 4, Defendant's Reply Memorandum, Exh. A.

█ Despite this affidavit, the issue of viability remains in genuine dispute. Plaintiff's concede that the fetuses were between the nineteenth and twenty-second week of gestation. The issue of viability, however, cannot be resolved by considering only the length of gestation which is what Dr. Smith did. "Viability" is defined as the time at which a fetus is capable of remaining alive separate from and independent of the mother. *Black's Law Dictionary* (5th ed.) at 1404. Because of its qualitative value, a determination of viability may consider the length of gestation, but it must also consider the development of the particular fetuses in issue. The court does not find that a fetus in its twenty-second week is not viable as a matter of law.

Because the parties continue to genuinely dispute whether the fetuses were viable at the time of injury, summary judgment is inappropriate at this time. A finder of fact upon trial will determine whether the fetuses were viable or not. Therefore, defendant's motion for partial summary judgment on plaintiffs' claims under the wrongful death statute is DENIED.

## CONCLUSION

The court hereby DENIES defendant United States of America's motion to dismiss the wrongful death claims against it and further DENIES defendant United States of America's motion, in the alternative, for summary judgment on those claims.

IT IS SO ORDERED.